PEACHTREE DEVELOPMENT COMPANY, APPELLEE, *v.*
PAUL ET AL., APPELLEES; COLERAIN TOWN MEETING
ZONING COMMITTEE ET AL., APPELLANTS.

[Cite as Peachtree Development Co. v. Paul (1981),
67 Ohio St. 2d 345.]

(No. 81-92—Decided July 29, 1981.)

*Santen, Santen & Hughes Co., L.P.A.,* and *Mr. William B. Singer,* for appellee Peachtree Development Company.

*Mr. Robert G. Hyland,* for appellants.

*Mr. Simon L. Leis, Jr.,* prosecuting attorney, and *Mr. Roger E. Friedman,* for appellees Board of County Commissioners and Board of Elections.

*Per Curiam.* The two critical issues in this case are (1) whether the board of county commissioners' approval of the CUP, which approval subjects the 164.5 acre tract to a standard of zoning different from that which existed prior to the approval, constitutes legislative action which is subject to a referendum in accordance with R. C. 303.12, and (2) whether Article XVI of the Hamilton County Zoning Resolution unlawfully delegates legislative authority to the regional planning commission.

In resolving the foregoing issues, we are mindful of the test which this court has articulated in unravelling the legislative-administrative dichotomy: "The test for determining whether the action of the legislative body is legislative or administrative is whether the action taken is one enacting a law, ordinance or regulation, or executing or administering a law, ordinance or regulation already in existence." *Donnelly* v. *Fairview Park* (1968), 13 Ohio St. 2d 1, paragraph two of the syllabus.

We also have received precedential guidance from *Gray* v. *Trustees of Monclova Twp.* (1974), 38 Ohio St. 2d 310, a case in which this court unanimously ruled, in a fact pattern analogous to the case at bar, that the action of a board of

township trustees in approving a planned unit development constituted legislative action. As the court specifically stated in *Gray* v. *Trustees of Monclova Twp., supra,* at 314: "***[T]he action of the board in approving such a plat is the functional equivalent of traditional legislative zoning, even though the entire PUD area is covered by the same 'nominal' zoning classification both before and after approval of the plat."

The Court of Appeals correctly observed that the *creation* of the CUP concept was a legislative act that was subject to a referendum. As the court below stated: "The Board's adoption of Article XVI of the Zoning Resolution under R. C. 303.022 was an amendment to the Zoning Resolution and it was subject to a referendum under R. C. 303.12. By that legislative act the board created a new zoning classification known as a Community Unit Plan, different from the other districts, more flexible but subject to the limitations and proceedings set forth in Article XVI." (Footnote omitted.)

However, the Court of Appeals committed reversible error in failing to rule that the *implementation* of the CUP, as well as its creation, is a legislative act, which is subject to a referendum. Applying the aforementioned theory to the facts at bar, the conclusion is inescapable that the Board of County Commissioners of Hamilton County, in approving Resolution No. 575, acted in a legislative manner since the board's action was the functional equivalent of altering the zoning classification of a sizeable section of Colerain Township.

That the board's attempt to implement appellee's CUP is tantamount to rezoning the area is readily apparent from the changes in the permitted uses associated with the CUP. Before the subject tract was designated as a CUP, the land was zoned for single-family residential use with each lot containing a minimum of 14,000 square feet with, *inter alia,* side yards of at least 10 feet and front and rear yards of at least 40 and 35 feet, respectively. Appellee's CUP as modified and approved by the board, provided for 87 single-family homes on lots of 12,000 square feet, 56 single-family homes in "clusters" on lots of 7,500 square feet, 136 single-family homes on lots of 7,500 square feet (with no side yard on one side), and 136 multi-family condominium units in groupings of various

sizes. The CUP also provided for a retail-commercial area of approximately four acres.

As a practical matter, the implementation of the CUP effects a zoning change of this area. When the board of county commissioners approved the CUP, the preexisting Residence A-2 classification remained in name only. As this court stated in *Gray* v. *Trustees of Monclova Twp., supra,* at 314, footnote 4: "The overall zoning classification in a PUD area can be termed 'nominal' because it does not, by itself, indicate the specific zoning restrictions in the area. These restrictions are ascertainable only by referring to the approved plats for the development."

We find additional support for our decision today from *Lutz* v. *Longview* (1974), 83 Wash. 2d 566, 569, 520 P. 2d 1374, in which the court, in analyzing the legal nature and effect of imposing a PUD upon a specific parcel of land, stated: "The authorities are clear that such a change in permitted uses is a rezone or amendment of the zoning ordinance. 'The end product is, of course, an amendment to the zoning ordinance which reclassifies the land in question.' 2 R. Anderson, American Law of Zoning, Section 8.38, at 19 (1968).***"

For all the foregoing reasons, therefore, we conclude that the board of county commissioners' approval of appellee's CUP constitutes legislative action, within the context of *Donnelly* v. *Fairview Park, supra,* and *Gray* v. *Trustees of Monclova Twp., supra,* because the approval is, in essence, an enactment, amendment or the functional equivalent of a new zoning classification for the affected area of Colerain Township. As such, the approval is subject to a referendum, pursuant to R. C. 303.12.

We summarily reject appellants' contention that Article XVI of Hamilton County Zoning Resolution impermissibly delegates legislative authority to the regional planning commission. Our review of the Zoning Resolution compels us to conclude that Article XVI only confers, on the regional planning commission, discretion as to the execution of the law by setting forth standards and guidelines that are sufficiently definite to pass constitutional muster.

Section 163.1 of Article XVI of the Zoning Resolution reads as follows:

"No building permit shall be issued for actual construction until and unless a final Development Plan, as defined in Sec. 31.22, shall have been reviewed and approved by the Regional Planning Commission with a determination that such plan is consistent with the approved plan and the purposes and intent of this Article. The Regional Planning Commission may approve variations in the Final Development Plan not in violation of any standards and requirements prescribed in this Article, and provided that the variations remain completely in harmony with the approved plan and within the spirit of the Resolution."

In analyzing the propriety of the board of county commissioners' delegation of authority to the regional planning commission to approve (1) a Final Development Plan and (2) variations in a Final Development Plan, we take into consideration this court's long-standing rule on the permissible delegation of legislative authority: "***The true distinction, therefore, is, between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made." *Cincinnati, Wilmington & Zanesville RR. Co. v. Commrs. of Clinton County* (1852), 1 Ohio St. 77, 88. See, also, *State, ex rel. Selected Properties, Inc., v. Gottfried* (1965), 163 Ohio St. 469; *L & M Investment Co. v. Cutler* (1932), 125 Ohio St. 12.

We have examined Article XVI of the Zoning Resolution and find that it contains sufficient standards to ensure that the regional planning commission acts in a manner consistent with the will of the board of county commissioners. More precisely, in approving a Final Development Plan, the regional planning commission must determine "that such plan is consistent with the approved plan and the purposes and intent of this Article [Article XVI]." Furthermore, the regional planning commission can only approve variations in a Final Development Plan if such variations are: "***not in violation of any standards and requirements prescribed in this Article, and provided that the variations remain completely in harmony with the approved plan and within the spirit of the Resolution."

Thus, in tailoring the specifics of a CUP, the regional plan-

ning commission exercises discretion, but only within the confines of sufficiently precise and definite standards, which standards enable a reviewing court to determine if the will of the board of county commissioners has been obeyed.

In rendering this decision, we are fully cognizant that the purpose of a CUP is to introduce an element of flexibility into the zoning of large tracts so that a mixture of uses can be employed and open spaces preserved, with minimum disturbance of the natural topography and little or no increase in the density of residences within the area. See, generally, 2 Anderson, American Law of Zoning (2 Ed.), Sections 11.01-11.24. Indeed, as the Court of Appeals colorfully observed, traditional Euclidean zoning sometimes resembles a cookie cutter design that is monotonous and sterile. However, as we have repeatedly stated, we sit as an appellate court with a limited scope of review; we do not sit as a super board of zoning appeals. Absent clear constitutional, statutory or procedural error, we are not free to impose our judgment in zoning matters. See *Leslie* v. *Toledo* (1981), 66 Ohio St. 2d 488; *Brown* v. *Cleveland* (1981), 66 Ohio St. 2d 93. Consequently, we believe that the voters of Colerain Township are in a much better position than we are to evaluate the desirability of appellee's CUP.

For all the foregoing reasons, the judgment of the Court of Appeals is reversed in part and affirmed in part. The cause is hereby remanded for further proceedings consistent with this opinion.

*Judgment reversed in part and*
*affirmed in part, and*
*cause remanded.*

CELEBREZZE, C. J., W. BROWN, P. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.

CLIFFORD F. BROWN, J., concurring in part and dissenting in part.

I concur in the majority's affirmance of the Court of Appeals' judgment holding Article XVI of the Hamilton County Zoning Resolution to be a legislative act. The majority also correctly finds the Community Unit Plan to be a lawful delegation of authority from the board of county commissioners to the regional planning commission. However, I dissent from the

majority's holding Resolution No. 575 to be legislative action subject to referendum under R. C. 303.12.

As the majority correctly notes, the test whether an act of a public body is legislative or administrative is whether the act in question enacts a law or regulation, or merely applies, executes or administers a law or regulation *already in existence*. *Donnelly* v. *Fairview Park* (1968), 13 Ohio St. 2d 1.

Applying this test to Article XVI of the Hamilton County Zoning Resolution, it is clear that the board's adoption of that resolution creating a new zoning classification known as a Community Unit Plan was a legislative act. That act enabled the regional planning commission to review and recommend individual developments for specific sites in Hamilton County.

However, the conclusion is not "inescapable" that every development authorized under Community Unit Plan legislation is similarly created by a legislative act. Every action of any board or commission necessarily flows from a legislative fount. That does not make it legislative. Resolution No. 575 is simply an application of the legislation authorizing creation of Community Unit Plans. It is an administrative act, not subject to review by referendum, but rather by judicial officers, including this court.

*Gray* v. *Trustees of Monclova Twp.* (1974), 38 Ohio St. 2d 310, cited by the majority, has no precedential value for this case. At the time the Monclova Township development known as Byrnwyck was approved, R. C. 303.022 had not been enacted. Therefore, the Monclova Township trustees had no authority to create such a development.[5]

R. C. 303.022 is the primary legislative source giving counties and townships power to authorize and approve such developments. Article XVI of the Hamilton County Zoning Resolution is the secondary legislative act conferring authority on county officials to approve such developments. Board Resolution No. 575 takes its place under R. C. 303.022 and Article XVI as an administrative application of the legislative policy expressed in the former enactments. Therefore, the

---

[5] Resolution No. 575 is similar to the resolution adopted by the city of Solon approving a zoning use exception under its charter, an action characterized by this court as administrative in *State, ex rel. Srovnal,* v. *Linton* (1976), 46 Ohio St. 2d 207.

trial court erred in holding board Resolution No. 575 to be a legislative act subject to referendum.

It is disturbing to find this court using language, *inter alia,* "***[W]e do not sit as a super board of zoning appeals. Absent clear constitutional, statutory or procedural error, we are not free to impose our judgment in zoning matters.***" These facile statements, mere *obiter dicta* and without sound judicial precedent, can be easily misconstrued as nullifying meaningful judicial review of zoning matters. If so misconstrued, these statements conflict with many sound pronouncements of this court to the contrary, *e.g., Driscoll* v. *Austintown Associates* (1975), 42 Ohio St. 2d 263; *Mobil Oil Corp.* v. *Rocky River* (1974), 38 Ohio St. 2d 23; *Gates Mills Investment Co.* v. *Pepper Pike* (1975), 44 Ohio St. 2d 73; *Curtiss* v. *Cleveland* (1959), 170 Ohio St. 127; *State, ex rel. Ice & Fuel Co.,* v. *Kreuzweiser* (1929), 120 Ohio St. 352, 356.