THE STATE EX REL. CROSSMAN COMMUNITIES OF OHIO, INC. ET AL. *v.* GREENE COUNTY BOARD OF ELECTIONS ET AL.

[Cite as *State ex rel. Crossman Communities of Ohio, Inc. v. Greene Cty. Bd. of Elections* (1999), 87 Ohio St.3d 132.]

(No. 99–1605—Submitted September 29, 1999—Decided October 5, 1999.)

134

*O'Diam, McNamee & Hill Co., L.P.A., Michael P. McNamee* and *David M. McNamee,* for relator Crossman Communities of Ohio, Inc.

*Roger E. Bloomfield,* for relators Bank One Trust Company, N.A. and Robert A. Herbruck, Cotrustees, and Robert A. Herbruck, Trustee.

*William F. Schenk,* Greene County Prosecuting Attorney, *Stephen K. Haller* and *Suzanne M. Schmidt,* Assistant Prosecuting Attorneys, for respondent Greene County Board of Elections.

*Dwight D. Brannon & Associates, Dwight D. Brannon* and *Kevin A. Bowman,* for intervening respondents.

---

**Per Curiam.** We initially reject intervening respondents' contention that this expedited election case should be dismissed for want of prosecution because relators did not file their evidence and brief within the time specified by S.Ct.Prac.R. X(9). Relators entered into a limited stipulated extension with respondent board pursuant to S.Ct.Prac.R. XIV(3)(B)(2)(a) and X(8), which extended their time to September 13 to file their evidence and brief. After construing S.Ct.Prac.R. X(9) *in pari materia* with these provisions and emphasizing that relators confirmed their interpretation of the rule with the Clerk's Office, that the only opposing party at the time—the board—agreed to the stipulation, and that the stipulation was limited to an extremely brief period of time, dismissal pursuant to S.Ct.Prac.R. X(9) and (11) is not warranted. The intervening respondents' assent to the extension was not required because they were not parties at the time the stipulation was entered into.

We also reject intervening respondents' additional preliminary argument that dismissal is appropriate because relators failed to list the addresses of all of the parties in their amended complaint, as intervening respondents claim is required under Civ.R. 10(A). As relators note, S.Ct.Prac.R. X(4)(A) requires that only the name, title, and address of the respondent are necessary in an original action complaint filed in this court. Relators' complaint complied with S.Ct.Prac.R. X(4)(A). The spirit of our Rules of Practice, much like the Rules of Civil Procedure, favors the resolution of cases upon their merits rather than upon claimed pleading deficiencies. See, generally, *Cecil v. Cottrill* (1993), 67 Ohio St.3d 367, 372, 618 N.E.2d 133, 137.

Having thus rejected intervening respondents' arguments claiming pleading deficiencies, we now address the merits of relators' claimed entitlement to a writ of prohibition.

In order to be entitled to the requested writ of prohibition, relators must establish that (1) the board of elections is about to exercise judicial or quasi-judicial power, (2) the exercise of such power is not legally authorized, and (3) if the writ is denied, they will suffer injury for which no other adequate remedy in the ordinary course of law exists. *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections* (1997), 80 Ohio St.3d 302, 305, 686 N.E.2d 238, 241. Regarding the first two requirements, in extraordinary actions challenging the quasi-judicial decision of a board of elections, the applicable standard is

whether the board engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions. *E. Ohio Gas Co. v. Wood Cty. Bd. of Elections* (1998), 83 Ohio St.3d 298, 300, 699 N.E.2d 916, 918. And despite respondents' contentions to the contrary, the board exercised quasi-judicial authority in denying relators' protests to the referendum petition following an evidentiary hearing, and prohibition may issue to prevent the placement of names or issues on a ballot even though a protest hearing has been completed, as long as the election has not yet been held. R.C. 3501.39(A)(2); *Cooker Restaurant Corp.*, 80 Ohio St.3d at 306, 686 N.E.2d at 242; *Christy v. Summit Cty. Bd. of Elections* (1996), 77 Ohio St.3d 35, 37, 671 N.E.2d 1, 3; *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections* (1995), 72 Ohio St.3d 289, 291, 649 N.E.2d 1205, 1207.

Relators contend that the board abused its discretion and acted in clear disregard of applicable law by denying their protests and placing the referendum issue on the November 2 ballot. In support of their contention, relators claim that Resolution No. 59–99 is an administrative act not subject to referendum, and the referendum petition failed to contain an attached certified copy of Resolution No. 59–99 as required by R.C. 731.32.

Section 1f, Article II of the Ohio Constitution provides initiative and referendum powers only on questions that municipalities "may now or hereafter be authorized by law to control by legislative action." See, also, Section 8.01, Article XVIII, Fairborn Charter, which specifies that "[t]he provisions for the Initiative and Referendum in municipal corporations, now in force or hereafter enacted, as prescribed by the laws of the State of Ohio, shall govern." Section 1f, Article II excludes administrative actions taken by a municipal legislative authority from referendum proceedings. *Buckeye Community Hope Found. v. Cuyahoga Falls* (1998), 82 Ohio St.3d 539, 697 N.E.2d 181, paragraph three of the syllabus; *Myers v. Schiering* (1971), 27 Ohio St.2d 11, 14, 56 O.O.2d 6, 8, 271 N.E.2d 864, 866.

"The test for determining whether the action of a legislative body is legislative or administrative is whether the action taken is one enacting a law, ordinance or regulation, or executing or administering a law, ordinance or regulation already in existence." *Donnelly v. Fairview Park* (1968), 13 Ohio St.2d 1, 42 O.O.2d 1, 233 N.E.2d 500, paragraph two of the syllabus. Consequently, if the action creates a law, it is legislative and subject to referendum, but if the action executes or administers an existing law, the action is administrative and not referendable. See *Buckeye Community Hope Found. v. Cuyahoga Falls* (1998), 82 Ohio St.3d 539, 544, 697 N.E.2d 181, 185.

More specifically, in applying the foregoing test to zoning cases involving planned unit development ("PUD"), we have held that "the *implementation of a PUD*, as well as its creation, *is a legislative act* subject to referendum" because

the action of approving a plat is the functional equivalent of traditional legislative zoning, although the entire PUD area is covered by the same nominal zoning classification both before and after the approval of the plat. (Emphasis added.) *State ex rel. Zonders v. Delaware Cty. Bd. of Elections* (1994), 69 Ohio St.3d 5, 11, 630 N.E.2d 313, 317–318; *Peachtree Dev. Co. v. Paul* (1981), 67 Ohio St.2d 345, 351, 21 O.O.3d 217, 220, 423 N.E.2d 1087, 1092; *Gray v. Trustees of Monclova Twp.* (1974), 38 Ohio St.2d 310, 314, 67 O.O.2d 365, 367, 313 N.E.2d 366, 369.

In accordance with the foregoing precedent, Resolution No. 59–99 constituted a referendable, legislative act because it implemented the PUD by approving the final development plan for Indian Ridge.

Relators next contend that the referendum petitioners violated R.C. 731.32, which provides:

"Whoever seeks to propose an ordinance or measure in a municipal corporation by initiative petition or files a referendum petition against any ordinance or measure shall, before circulating such petition, file a certified copy of the proposed ordinance or measure with the city auditor or the village clerk.

"As used in this section, 'certified copy' means a copy containing a written statement attesting that it is a true and exact reproduction of the original proposed ordinance or measure or of the original ordinance or measure."

Relators claim that the Clerk/Finance Director's signature beneath the word "ATTEST" on the copy of the resolution was insufficient to comply with the R.C. 731.32 requirement of a "certified copy." While we require strict compliance with R.C. 731.32, verification and certification are both sufficient. See *State ex rel. Shaw v. Lynch* (1991), 62 Ohio St.3d 174, 175–176, 580 N.E.2d 1068, 1069, construing former R.C. 731.32. "Attest" means "to certify to the verity of a copy of a public document formally by signature" and an attested copy of a document is "one which has been examined and compared with the original, with a certificate or memorandum of its correctness, signed by the persons who have examined it." Black's Law Dictionary (6 Ed.1990) 127–128. Accordingly, the City Clerk/Finance Director's original signature attesting the copy of the resolution complied with R.C. 731.32. Notably, relators attempt to introduce evidence that they did not present to the board at the protest hearing to support their argument. The board, however, could not have abused its discretion or clearly disregarded applicable law based on evidence that was never presented to it. Relators should have presented such evidence to the board, but they failed to do so.

Based on the foregoing, the board neither abused its quasi-judicial discretion nor clearly disregarded applicable law by denying relators' protests to the referendum petition. Therefore, relators are not entitled to the writ of prohibi-

tion to prevent the referendum election.[1]  Our holding is consistent with the general precepts favoring the right of electors to vote on these important issues. See *Christy v. Summit Cty. Bd. of Elections,* 77 Ohio St.3d at 40, 671 N.E.2d at 5, quoting *State ex rel. King v. Portsmouth* (1986), 27 Ohio St.3d 1, 4, 27 OBR 73, 75, 497 N.E.2d 1126, 1128 (" '[P]rovisions for municipal initiative or referendum should be liberally construed in favor of the power reserved so as to permit rather than preclude the exercise of such power, and the object sought to be attained should be promoted rather than prevented or obstructed' "); *State ex rel. Taft v. Franklin Cty. Court of Common Pleas* (1998), 81 Ohio St.3d 480, 481, 692 N.E.2d 560, 562 ("[C]ourts should be very reluctant to interfere with elections, except to enforce rights or ministerial duties as required by law"). Accordingly, we deny the writ.

*Writ denied.*

MOYER, C.J., RESNICK and F.E. SWEENEY, JJ., concur.

DOUGLAS, J., concurs in judgment.

COOK, J., dissents.

LUNDBERG STRATTON, J., dissents.

PFEIFER, J., not participating.

---

**COOK, J., dissenting.**  I respectfully dissent from the judgment addressing the merits of relators' prohibition claim and denying the writ.  For the following reasons, the court should grant intervening respondents' motion and dismiss the cause.

S.Ct.Prac.R. X(9) provides:

"Because of the necessity of a prompt disposition of an original action relating to a pending election, and in order to give the Supreme Court adequate time for full consideration of the case, if the action is filed within 90 days prior to the election, the respondent shall file a response to the complaint within five days after service of the summons.  *Unless otherwise ordered by the Supreme Court, relator shall file any evidence and a merit brief in support of the complaint within three days following the response,* respondent shall file any evidence and a merit brief within three days after the filing of relator's merit brief, and relator

---

1.  By so holding, we need not determine whether relators established that they lacked an adequate remedy in the ordinary course of law because even if they did, they are not entitled to the writ.

may file a reply brief within three days after the filing of respondent's merit brief." (Emphasis added.)

Under S.Ct.Prac.R. X(9), relators' evidence and brief were due on September 7. Relators, however, entered into a stipulation with respondent board, purportedly pursuant to S.Ct.Prac.R. XIV(3)(B)(2)(a) and X(8), which they claimed extended the time to September 13 to file their evidence and brief.

Relators' attempted stipulated extension did not extend the time to file their evidence and merit brief. S.Ct.Prac.R. X(9) manifestly required relators to file their evidence and brief within three days of the board's answer "[u]nless otherwise ordered by the Supreme Court." We *did not order* an extension of the briefing and evidence schedule in S.Ct.Prac.R. X(9) in this case.

In addition, the stipulated extension provision of S.Ct.Prac.R. XIV(3)(B) does not apply to expedited election matters, which are governed by S.Ct.Prac.R. X(9). Even if the language of the pertinent rules were ambiguous on this point, the Staff and Committee Notes to the 1996 amendment to the general extension provision specify that "[t]he [1996] amendment to S.Ct.Prac.R. X, Section 9, to impose directly in the rules a schedule for briefing expedited election cases, deliberately sets an abbreviated schedule *which should not be extended by a general rule.*" (Emphasis added.) Staff and Committee Notes to 1996 amendment to S.Ct.Prac.R. XIV(3). Therefore, the *general* rule of S.Ct.Prac.R. XIV(3)(B)(2) permitting stipulated extensions of up to twenty days for parties to file briefs and evidence in Supreme Court cases does not apply to expedited election matters, which are governed by their own *special* provision, S.Ct.Prac.R. X(9).

Further, this result comports with the mandatory duty of extreme diligence and promptness in election matters. *State ex rel. The Ryant Commt. v. Lorain Cty. Bd. of Elections* (1999), 86 Ohio St.3d 107, 113, 712 N.E.2d 696, 701. The purpose of S.Ct.Prac.R. X(9) "is to incorporate an expedited schedule for the presentation of evidence and briefs in election cases filed in that time period to assist the court in resolving such cases promptly." *State ex rel. SuperAmerica Group v. Licking Cty. Bd. of Elections* (1997), 80 Ohio St.3d 182, 187, 685 N.E.2d 507, 511. This purpose is not furthered by circumventing the manifest language of our rules and the intent specified in the associated commentary by permitting parties to delay our resolution of election cases up to forty or more days by stipulating to extensions. Here, the two stipulated extensions used by relators and the board extended the S.Ct.Prac.R. X(9) briefing schedule by ten additional days. We have held that a delay for as brief a period as nine days can preclude our consideration of the merits of an expedited election case. See *Paschal v. Cuyahoga Cty. Bd. of Elections* (1995), 74 Ohio St.3d 141, 656 N.E.2d 1276.

Finally, any mistaken advice by the Clerk's Office and the board's conduct in stipulating to relators' attempted extension does not estop this court from holding that the attempted stipulation was unwarranted and invalid.  See, *e.g.*, *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections* (1997), 80 Ohio St.3d 302, 307, 686 N.E.2d 238, 242, citing *State ex rel. Chevalier v. Brown* (1985), 17 Ohio St.3d 61, 63, 17 OBR 64, 66, 477 N.E.2d 623, 625 (" 'The principle of estoppel does not apply against a state or its agencies in the exercise of a governmental function' ").

Based on the foregoing, relators did not file their evidence and brief within the time required by S.Ct.Prac.R. X(9).  Therefore, this case must be dismissed under S.Ct.Prac.R. X(11) ("Unless all evidence is presented and the relator's brief is filed within the schedule issued by the Supreme Court, an original action *shall be dismissed for want of prosecution* ").  (Emphasis added.)  See, also, *Super-America*, 80 Ohio St.3d at 183, 685 N.E.2d at 508; *State ex rel. Vornholt v. Ohio Dept. of Transp.* (1999), 85 Ohio St.3d 1470, 709 N.E.2d 508.  We should apply, rather than ignore, the mandatory language of our own rules.  See, *e.g.*, *State ex rel. Cuyahoga Cty. v. State Personnel Bd. of Review* (1998), 82 Ohio St.3d 496, 499, 696 N.E.2d 1054, 1057, where we observed that courts lack authority to ignore the plain language of provisions under the guise of interpretation or liberal or narrow construction.  Because the court does not dismiss this cause pursuant to the plain language of S.Ct.Prac.R. X(9) and (11), and in accordance with the manifest intent and policy underlying these rules, I respectfully dissent.