JOURNAL ENTRY AND OPINION
Relators are electors of the City of Parma, a non-chartered municipality. Parma City Council passed Ordinance No. 266-99 rezoning two parcels from single-family district to retail business district. Intervenor Heritage Development Company (Heritage) requested the zoning change.
Relators delivered a referendum petition to the Auditor of the City of Parma (Auditor) requesting that Ordinance No. 266-99 be submitted to the electors of the city for their approval or rejection at the November 7, 2000 general election. The Auditor delivered the referendum petition to respondent Cuyahoga County Board of Elections (Board). The Auditor verified that the petition was sufficient and valid and requested that the Board place the ordinance on the November 7, 2000 ballot.
Heritage filed a protest challenging the proposed referendum petition. The Board allowed the protest and determined that the referendum petition would not appear on the November 7, 2000 ballot.
Relator requests that this court: issue a writ of mandamus compelling respondents — the Board and three of its members — to place the referendum petition on the November 7 ballot; and issue a writ of prohibition to prevent the Board from exercising judicial or quasi-judicial authority over the Proposed Ordinance * * * and to reject the Protest and submit the Proposed Referendum to the electors * * *. Complaint, ad damnum clause.
R.C. 731.32 provides:
 Whoever seeks to propose an ordinance or measure in a municipal corporation by initiative petition or files a referendum petition against any ordinance or measure shall, before circulating such petition, file a certified copy of the proposed ordinance or measure with the city auditor or the village clerk.
As used in this section, "certified copy" means a copy containing a written statement attesting that it is a true and exact reproduction of the original proposed ordinance or measure or of the original ordinance or measure.
(Emphasis added.) R.C. 731.20 provides, in part: Ordinances, resolutions, and bylaws shall be authenticated by the signature of the presiding officer and clerk of the legislative authority of the municipal corporation. (Emphasis added.) The Board allowed the protest because relators had not filed a certified copy of the referendum petition with the Auditor as required by R.C. 731.32. Transcript of the May 16, 2000 meeting of the Board (TR.), at 58, et seq.
The Auditor twice received the referendum petition prior to its circulation — on January 21, 2000 and January 31, 2000. Both versions contained the language of Ordinance No. 266-99. The January 31 version included the word ATTEST followed by /s/ preceding the typewritten name of the clerk of council as well as the typewritten names of the president of council and the mayor each preceded by /s/. The Clerk of Council, Michael F. Hughes, testified: The `/s/' basically is stating that they signed it * * * . TR. 50.
Respondents have filed a motion for summary judgment and contend that relators' failure to file a certified copy of the proposed ordinance with the Auditor before circulating the petition provides a sufficient basis for denying relief in mandamus and prohibition. We agree. Likewise, we find the arguments in intervenor's motion to deny relators' complaint — which we treat as a motion to dismiss — well-taken.
The parties do not dispute that R.C. 731.32 is controlling in this action. As a consequence, the dispositive issue is whether the version of the referendum petition submitted to the Auditor on January 31, 2000 complies with the requirement that a person filing a referendum petition file a certified copy of the ordinance with the Auditor before circulating the petition.
In elections cases, the standard for determining whether relief lies in mandamus is clear.
 When adjudicating an extraordinary writ action in an election matter involving the review of a decision of a board of elections, the writ of mandamus may be issued if it is determined that the board engaged in fraud, corruption, abuse of discretion, or a clear disregard of statutes or applicable legal provisions. State ex rel. Kelly v. Cuyahoga Cty. Bd. Of Elections (1994), 70 Ohio St.3d 413, 639 N.E.2d 78; State ex rel.
 White v. Franklin Cty. Bd. Of Elections (1992), 65 Ohio St.3d 5, 598 N.E.2d 1152; State ex rel. O'Donnell v. Cuyahoga Cty. Bd. Of Elections (Feb. 2, 2000), Cuyahoga App. No. 77536, unreported. An abuse of discretion connotes an attitude that is unreasonable, arbitrary or unconscionable. State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. Of Elections (1997), 80 Ohio St.3d 302, 686 N.E.2d 238.
State ex rel. Donegan v. Cuyahoga Cty. Bd. of Elections (Feb. 10, 2000), Cuyahoga App. No. 77575, unreported, at 4-5. Likewise, the standard for determining whether relief in prohibition is appropriate is clear.
In order to be entitled to the requested writ of prohibition, relators must establish that (1) the board of elections is about to exercise judicial or quasi-judicial power, (2) the exercise of such power is not legally authorized, and (3) if the writ is denied, they will suffer injury for which no other adequate remedy in the ordinary course of law exists. State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections (1997), 80 Ohio St.3d 302, 305, 686 N.E.2d 238, 241. Regarding the first two requirements, in extraordinary actions challenging the quasi-judicial decision of a board of elections, the applicable standard is whether the board engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions. E. Ohio Gas Co. v. Wood Cty. Bd. of Elections (1998), 83 Ohio St.3d 298,300, 699 N.E.2d 916, 918. And despite respondents' contentions to the contrary, the board exercised quasi-judicial authority in denying relators' protests to the referendum petition following an evidentiary hearing, and prohibition may issue to prevent the placement of names or issues on a ballot even though a protest hearing has been completed, as long as the election has not yet been held. R.C. 3501.39(A)(2); Cooker Restaurant Corp., 80 Ohio St.3d at 306, 686 N.E.2d at 242; Christy v. Summit Cty. Bd. of Elections (1996), 77 Ohio St.3d 35, 37, 671 N.E.2d 1,3; State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections (1995),72 Ohio St.3d 289, 291, 649 N.E.2d 1205, 1207.
State ex rel. Crossman Communities of Ohio, Inc. v. Greene Cty. Bd. Of Elections (1999), 87 Ohio St.3d 132, 135-136, 717 N.E.2d 1091.
Relators do not suggest (nor does the record of the proceedings before respondents suggest) that respondents engaged in fraud or corruption. Rather, relators contend that respondents abused their discretion and acted in clear disregard of applicable legal provisions.
Generally, `provisions for municipal initiative or referendum should be liberally construed in favor of the power reserved so as to permit rather than preclude the exercise of such power, and the object sought to be attained should be promoted rather than prevented or obstructed.' State ex rel. King v. Portsmouth (1986), 27 Ohio St.3d 1, 4, 27 OBR 73, 75, 497 N.E.2d 1126, 1128, quoting State ex rel. Sharpe v. Hitt (1951),155 Ohio St. 529, 535, 44 O.O. 489, 491, 99 N.E.2d 659, 662 (also quoted in Christy v. Summit Cty. Bd. of Elections (1996), 77 Ohio St.3d 35, 40,671 N.E.2d 35). Nevertheless, the Supreme Court requires strict compliance with R.C. 731.32. Crossman, supra, at 137.
Relators argue that liberal construction requires granting relief in this action and permitting the referendum on Ordinance No. 266-99 to go forward on November 7, 2000. Respondents argue, however, that strict compliance with R.C. 731.32 as construed by the Supreme Court requires denying relief.
For example, the Supreme Court has held that tendering a referendum petition to a public official other than the auditor is a sufficient basis for invalidating the petition. In State ex rel. Citizens for a Better Beachwood v. Cuyahoga Cty. Bd. of Elections (1991),62 Ohio St.3d 167, 580 N.E.2d 1063, the relators — Citizens for a Better Beachwood (CBB) and a Beachwood voter — sought a writ of mandamus to compel the board of elections and its members to refer a zoning ordinance to voters at the 1991 general election. CBB presented a referendum petition to the clerk of council who was instructed by council to submit the issue to the board of elections. A protest was filed in August, 1991 asserting that CBB did not comply with R.C. 731.32
because a verified copy of the ordinance was not filed with the city auditor prior to circulating the petition. (R.C. 731.32 was amended by Am.H.B. No. 192, effective October 10, 1991, to require filing a `certified' copy of a referred ordinance and to define the term `certified copy.' Citizens for a Better Beachwood, supra, at 167, n. 1.) After the board of elections allowed the protest and refused to place the issue on the ballot, the relators sought a writ of mandamus. The Supreme Court denied relief in mandamus and held that the board of elections properly applied R.C. 731.32.
In State ex rel. Bogart v. Cuyahoga Cty. Bd. of Elections (1993),67 Ohio St.3d 554, 621 N.E.2d 389, two members of the Committee to Preserve Beachwood, Inc. presented a referendum petition to Dale L. Davis, the clerk of council and finance director. They also requested a copy of the ordinance and that Davis sign a certification attesting that the copy of the ordinance, which was attached to the petition, was a true and exact copy and had been filed with Davis * * * . Davis signed the certification, and the members of the committee left a copy of the petition and the ordinance, as certified, with him. No certified copy of the ordinance was filed with the city auditor * * * .
Id. An elector, Jeffrey Bogart, brought a protest which the board of elections disallowed and placed the referendum on the ballot. Bogart filed an action in mandamus in the Supreme Court to compel the board of elections to allow his protest and reject the referendum petition. The Bogart court concluded: We adhere to our decision in Citizens for a Better Beachwood. * * * . R.C. 731.32 requires the filing of a certified copy of an ordinance with the city auditor before circulating the petition. Id. at 555. As a consequence, the Supreme Court allowed the writ and compelled the board of elections to allow Bogart's protest as well as reject the petition.
Relators argue, however, that Crossman, supra, requires that the referendum on Ordinance No. 266-99 go forward. In Crossman, the Fairborn City Council enacted Resolution No. 59-99, which approved Crossman's final development plan for [a community of single-family residential homes] subject to six conditions.
* * *
[Two individuals] filed an unsigned referendum petition with the office of the Fairborn Clerk/Finance Director.
* * *
Attached to the referendum petition was a full and correct copy of Resolution No. 59-99. The copy contained the Fairborn Clerk/Finance Director's signature, which was located under "ATTEST:". The copy, however, did not contain the notation that the copy was "CERTIFIED TO BE A TRUE COPY OF THE ORIGINAL ON FILE IN MY OFFICE," which other copies of original records in the custody of the Clerk/Finance Director contained.
Id. at 132-133.
Crossman and the trustees for the entities who owned the majority of the property filed an action in prohibition in the Supreme Court to prevent the board of elections from conducting an election on the referendum issue.
 Relators claim that the Clerk/Finance Director's signature beneath the word "ATTEST" on the copy of the resolution was insufficient to comply with the R.C. 731.32 requirement of a "certified copy." While we require strict compliance with R.C. 731.32, verification and certification are both sufficient. See State ex rel. Shaw v. Lynch (1991), 62 Ohio St.3d 174, 175-176, 580 N.E.2d 1068, 1069, construing former R.C. 731.32. "Attest" means "to certify to the verity of a copy of a public document formally by signature" and an attested copy of a document is "one which has been examined and compared with the original, with a certificate or memorandum of its correctness, signed by the persons who have examined it." Black's Law Dictionary (6 Ed. 1990) 127-128. Accordingly, the City Clerk/Finance Director's original signature attesting the copy of the resolution complied with R.C. 731.32.
Id. at 137.
Relators contend, therefore, that Crossman requires that we hold that the form of the copy of Ordinance No. 266-99 attached to the petition — i.e., ATTEST followed by /s/ preceding the typewritten name of the clerk of council as well as the typewritten names of the president of council and the mayor each preceded by /s/ is sufficient to comply with R.C. 731.32. Yet, the essential holding of the Crossman court is that the City Clerk/Finance Director's original signature attesting the copy of the resolution complied with R.C. 731.32. Id. (Emphasis added.) No original signature appears on the copy of Ordinance No. 266-99 attached to the referendum petition. See also R.C. 731.20, supra.
The case law applying R.C. 731.32 requires a balance between strict compliance and liberal construction permitting the exercise of the power of municipal referendum. Nevertheless, Citizens for a Better Beachwood, Bogart and Crossman clearly require parties invoking that power to comply with the requirements of R.C. 731.32. Attaching a certified copy of the ordinance to the petition ensures that citizens asked to sign a petition will have the opportunity to examine an authenticated copy of the original text of the ordinance. The copy of Ordinance No. 266-99 attached the petition in this case appears as if it could have been prepared on a home computer with common word-processing software or a typewriter using a printed form for ordinances. With merely type-written names and lacking the signature of the clerk of council, the copy of the ordinance lacks essential indicia of authenticity and reliability.
We recognize that this holding may appear to elevate form over substance to the detriment of the power of municipal referendum. The language of R.C. 731.32 requiring that a certified copy of the ordinance be attached to the petition is, however, unequivocal. The Clerk of Council, Michael F. Hughes, testified before the Board that he certifies copies of ordinances only when requested. TR. at 21, 51. Mr. Hughes also testified before the Board as follows in response to a question from counsel for intervenor:
 Q: Were you ever asked to certify 266-99 as you allegedly gave a copy of that ordinance to the Committee?
 A.: I have never been asked to certify anything for them. Additionally, the Auditor, did not receive a certified copy of Ordinance No. 266-99. TR. at 12. The record reflects, therefore, that relators did not take the minimal initiative of requesting and securing a certified copy of the ordinance despite the clear language of R.C. 731.32.
Neither the case law nor the facts of this case justify the failure of relators to file a certified copy of Ordinance No. 266-99 prior to circulating the petition. In light of the requirements of R.C. 731.32
and the record, we cannot conclude that respondents abused their discretion or acted in clear disregard of applicable legal provisions. As a consequence, relief is not appropriate in either mandamus or prohibition.
Additionally, relators — for the first time — challenge the standing of intervenor to appear in this action.
 It is true that as a general principle, resident electors and taxpayers * * * have standing to bring mandamus actions to enforce public duties in election matters. State ex rel. Barth v. Hamilton Cty. Bd. of Elections (1992), 65 Ohio St.3d 219, 221-222, 602 N.E.2d 1130, 1132-1133. Nevertheless, this does not mean that a nonresident nonelector of a municipality can never have standing to compel a public official of the municipality to perform public duties. But, see, State ex rel. Russell v. Ehrnfelt (1993), 67 Ohio St.3d 132, 133, 616 N.E.2d 237, 238 (Nontaxpaying nonresidents of municipal corporation who merely had a contingent, contractual interest in sewer rates paid by others lacked standing to bring mandamus action to compel mayor to enforce ordinance pertaining to sewer rates.).
 Instead, the applicable test is whether relators would be directly benefited or injured by a judgment in the case. Massie, 76 Ohio St.3d at 585, 669 N.E.2d at 841. This test applies to mandamus actions concerning election matters. State ex rel. Botkins v. Laws (1994), 69 Ohio St.3d 383, 387-388, 632 N.E.2d 897, 902; State ex rel. Hinkle v. Franklin Cty. Bd. of Elections (1991), 62 Ohio St.3d 145, 150-151, 580 N.E.2d 767, 771.
State ex rel. Sinay v. Sodders (1997), 80 Ohio St.3d 224, 226,685 N.E.2d 754, 757. Relators acknowledge in their complaint that Parma City Council * * * passed Ordinance No. 266-99 * * * at the request of Heritage Development Company * * *. Complaint, pars. 14, 16. Furthermore, intervenor filed the protest which resulted in the action by the Board. We cannot conclude, therefore, that intervenor lacks standing. We also note that relators did not oppose the motion to intervene.
Accordingly, we grant respondents' motion for summary judgment and intervenor's motion to deny relators' complaint — which we treat as a motion to dismiss. Relators to pay costs.
Writs denied.
 _________________________ SPELLACY, JUDGE
TERRENCE O'CONNELL, P.J. and KENNETH A. ROCCO, J. CONCUR.