This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellants Wayne Dittmer, Denver Casto, John Franko, and Joseph Muzquiz have appealed from a decision of the Lorain County Court of Common Pleas that granted motions to dismiss filed by Appellees City of Lorain ("Lorain") and Lorain Land Development, LLC ("LLD"). This Court affirms.
 I {¶ 2} This case concerns what is commonly referred to in zoning as "Planned Unit Developments" or "PUDs." The Ohio Supreme Court in Gray v. Trustees of Monclova Twp. (1974), 38 Ohio St.2d 310, explained the difference between traditional zoning concepts and PUD zoning.
"Under traditional concepts of zoning, a political subdivision is divided into a number of zoning districts by the local legislative body, which also establishes uniform rules concerning allowable type, size and location of buildings within a given district. Each improvement within a zoning district must comply with the same legislative specifications, unless a variance is sought and granted. Recently, however, the popularity of large-scale residential projects has engendered a new mode of zoning, variously referred to as Planned Unit Development (PUD), or Community Unit Plan (CUP). PUD zoning permits those aspects of land development which are normally regulated by zoning to vary within a geographically defined area bearing a single zoning classification. Within the PUD there may be found single-family dwellings, multi-family units, schools, open spaces, recreational facilities and other collateral nonresidential uses. In short, a PUD is often a self-contained, although not necessarily politically separate, community." Gray,38 Ohio St.3d at 311.
 {¶ 3} Here, Lorain enacted Chapter 1157 of the Lorain City Zoning Code ("LCZC") to govern PUD zoning, and the formation of PUD districts; Chapter 1157 refers to traditional PUD districts as R-PUD "Residential Planned Unit Development" districts. The purpose of an R-PUD district, as indicated by LCZC 1157.01, is "to promote progressive development of land and construction thereon by encouraging planned unit developments[.]"
 {¶ 4} Pursuant to Chapter 1157 of the LCZC, a party must follow certain procedures before an area can be zoned to R-PUD. First, a party must file a preliminary plan application with the Chairman of the Planning Commission pursuant to LCZC 1157.14. If the Planning Commission recommends that the application be approved, and the Lorain City Council subsequently approves the preliminary application plan, a party must then file a final development plan and subdivision plat with the Planning Commission pursuant to LCZC 1157.16; the Planning Commission then submits recommendations to the Lorain City Council. "Within sixty days after receipt of the final recommendations of the Planning Commission, Council shall by ordinance, either approve or disapprove the final development and subdivision plat as presented."
 {¶ 5} In compliance with LCZC 1157.14, LLD filed a preliminary plan application with the Lorain City Planning Commission to rezone: (1) approximately 202.70 acres of land located off of Jaeger Road from R-1A "Residential" to R-PUD; and (2) approximately 327 acres of land located off of Meister Road from R-1B "Residential" to R-PUD. The land to be rezoned to R-PUD is known as "Martin's Run," which includes five proposed subdivisions: Martin's Run Village, The Fields of Martin's Run, Marsh Ridge at Martin's Run, The Crossings at Martin's Run, and The Villas at Martin's Run.
 {¶ 6} The Lorain City Council approved the preliminary plan application for rezoning Martin's Run by enacting Ordinances Nos. 77-01 and 78-01, and the area was automatically rezoned to R-PUD. Thereafter, the Lorain City Council legislatively approved final development plans within the R-PUD district (i.e., Martin's Run Village, The Fields of Martin's Run, Marsh Ridge at Martin's Run, The Crossings at Martin's Run, and The Villa's at Martin's Run) through the enactment of Ordinances Nos. 212-01 and 5-02, 213-01 and 06-02, 42-02, 43-02, and 83-02.
 {¶ 7} Appellants appealed the zoning decision of Lorain pursuant to Chapters 2505 and 2506 of the Ohio Revised Code. Appellants argued that the decision of the Lorain City Council was "unconstitutional, illegal, arbitrary, capricious, unreasonable, contrary to law and not supported by the preponderance of substantial, reliable and probative evidence." Lorain and LLD filed motions to dismiss the appeals. Lorain argued that the Lorain City Council's plan to rezone the area known as Martin's Run was a legislative act, rather than an administrative act. Because legislative actions are not appealable pursuant to R.C. 2506.01
et seq., Lorain contended that the trial court lacked subject matter jurisdiction. LLD, on the other hand, argued that the Appellants lacked standing to bring the appeals because they were not persons directly affected by the decision of the Lorain City Council. The trial court granted the motions to dismiss, holding in one order: "[T]his court concludes that the Lorain City Council was acting in a legislative capacity and, therefore, Ohio Revised Code Chapter 2506 would not be applicable. Therefore, the Motions to Dismiss are hereby granted."
 {¶ 8} Appellants have timely appealed, asserting one assignment of error.
 II Assignment of Error "THE TRIAL COURT ERRED IN GRANTING THE MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, AND IN DENYING THE MOTION FOR RELIEF FROM JUDGMENT DUE TO THE LACK OF SUBJECT MATTER JURISDICTION, HOLDING THAT THE COUNCIL'S APPROVAL OF THE FINAL DEVELOPMENT PLANS OF THE MARTIN'S RUN PLANNED UNIT DEVELOPMENT FOR SUBDIVISIONS ALREADY ZONED TO PUD ZONING, CONSTITUTED IMPLEMENTATION OF THE PUD ZONING, LEGISLATIVE ACTION WHICH CAN NOT [BE] APPEALED UNDER [R.C. 2506]."
 {¶ 9} In Appellants' sole assignment of error, they have argued that the trial court erred by granting Lorain's and LLD's motions to dismiss. Specifically, they have contended that the action of the Lorain City Council was not a legislative act, but rather an administrative act. We disagree.
 {¶ 10} The standard of review for a motion to dismiss pursuant to Civ.R. 12(B)(1) is "whether any cause of action cognizable by the forum has been raised in the complaint." State ex rel. Bush v. Spurlock (1989), 42 Ohio St.3d 77, 80; see, also, Crestmont Cleveland Partnership v. Ohio Dept. of Health (2000), 139 Ohio App.3d 928, 936, appeal not allowed (2001), 91 Ohio St.3d 1419. An appellate court's review of a motion to dismiss predicated on Civ.R. 12(B)(1) is de novo, and therefore it must review the issues independently of the trial court's decision. Crestmont, 139 Ohio App.3d at 936.
 {¶ 11} Under R.C. 2506.01, administrative actions of administrative officers and agencies resulting from a quasi-judicial proceeding are appealable to the common pleas court. See M.J. Kelley Co. v. Cleveland (1972), 32 Ohio St.2d 150, paragraph one of the syllabus. However, it is well established that a trial court does not have the authority to hear appeals based on legislative acts because such acts are not appealable pursuant to R.C. 2506.01, and thus a trial court lacks subject matter jurisdiction over the matter. Moraine v. Bd. of County Commrs. (1981), 67 Ohio St.2d 139, 144; see, also, Thomas v. Beavercreek (1995), 105 Ohio App.3d 350, 354, appeal not allowed (1995),74 Ohio St.3d 1477.
 {¶ 12} In determining whether the trial court erred in granting Lorain's motion to dismiss, this Court must determine if Lorain City Council's subsequent approval of the final development plans for Martin's Run was a legislative act, a judicial act, or a quasi-judicial act. The test is "whether the action taken is one enacting a law, ordinance or regulation, or executing or administering a law, ordinance or regulation already in existence." Donnelly v. Fairview Park (1968), 13 Ohio St.2d 1, paragraph two of the syllabus. Consequently, if the action creates a law, it is legislative and subject to referendum, but if the action executes or administers an existing law, the action is administrative and appealable. Donnelly, 13 Ohio St.2d at 4; see, also, Buckeye Community Hope Found. v. Cuyahoga Falls (1998), 82 Ohio St.3d 539, 544.
 {¶ 13} In applying the above cited test, Appellants have contended that the actions of the Lorain City Council were administrative. Appellants have essentially argued that when Lorain City Council enacted Ordinances Nos. 212-01 and 5-02, 213-01 and 06-02, 42-02, 43-02, and 83-02, which approved rezoning for the final development plan of Martin's Run, after it enacted Ordinance Nos. 77-01 and 78-01, which effectively rezoned Martin's Run from residential to R-PUD, the council was executing or administering an existing law. In other words, Appellants have argued that the council's subsequent approval of the final development plans of the Martin's Run subdivisions was done pursuant to pre-existing zoning regulations, i.e., Ordinance Nos. 77-01 and 78-01. Relying on State ex rel. Zonders v. Delaware Cty. Bd. of Elections (1994), 69 Ohio St.3d 5,13, which stated, "where specific property is already zoned as a PUD area, approval of subsequent development as being in compliance with the existing PUD standards is an administrative act which is not subject to referendum," Appellants have argued that "approval of the final development plans for the Planned Unit Development known as Martin's Run, Subdivision No. 1, The Fields, Marsh Ridge, The Villas, and The Crossings would constitute administrative acts." We find, however, that Zonders is inapplicable to the case at bar.
 {¶ 14} In Zonders, the Ohio Supreme Court addressed, among other things, whether R.C. 519.02.1 precluded a referendum on the rezoning of certain property from a rural residential district to a PUD. R.C. 519.02.1 provided, in pertinent part:
 "A township zoning resolution or amendment adopted in accordance with this chapter may establish or modify planned-unit development regulations, which regulations shall only apply to property at the election of the property owner and which regulations may include standards to be used by the board of township trustees or, if the board so chooses, by the township zoning commission, in determining whether to approve or disapprove any planned-unit development. *** If standards are adopted for approval or disapproval of planned-unit developments, no planned-unit development shall be approved unless the plan for that development satisfies the standards of approval established under this section. No approval of a planned-unit development as being in compliance with the standards of approval established under this section, if any, shall be considered to be an amendment or supplement to the township zoning resolution for the purpose of [R.C. 519.21]." (Emphasis added.)
 {¶ 15} The Zonders court had to determine whether the above cited language (i.e., "No approval of a planned-unit development as being in compliance with the standards of approval established under this section, if any, shall be considered to be an amendment or supplement to the township zoning resolution for the purpose of [R.C. 519.21]"), which indicates that the approval of PUDs as being in compliance with established standards would not be considered a referendable amendment or supplement to the township zoning resolution, included the initial act of rezoning. Relying on Jurkiewicz v. Butler Cty. Bd. of Elections (1993),85 Ohio App.3d 503, 506 the court concluded that R.C. 519.02.1 did not preclude a referendum with respect to rezoning the land. Id. at 6. The Court held: "R.C. 519.02.1 does not exempt the initial rezoning of property from one classification to another from the referendum provisions of R.C. 519.12 where the latter classification is a PUD." Id. at 12.
 {¶ 16} The law expressed in Zonders is inapposite to the instant case because Zonders dealt with R.C. 519.02.1, which governs township zoning for PUDs. In fact, the court's conclusion in Zonders is based primarily on the statutory interpretation of language added to R.C. 519.02.1 after the General Assembly enacted Am.Sub.S.B. No. 164. Thus, the holding in Zonders is limited to cases involving township zoning. See Solove v. Westerville City Council, 10th Dist. No. 01AP-1213, 2002-Ohio-2925 . ./. ./10/2002/2002-Ohio-2925.doc, at ¶ 105. This case does not involve township zoning or R.C. Chapter 519. Rather, this case involves city zoning, and this Court must determine whether the implementation of a preexisting zoning regulation constitutes legislative or administrative action. Therefore, the law of Zonders does not apply. We find, however, that this case is governed by the law expressed in Peachtree Development Co. v. Paul (1981), 67 Ohio St.2d 345, and State ex rel. Crossman Communities of Ohio, Inc. v. Greene Cty. Bd. of Elections (1999),87 Ohio St.3d 132.
 {¶ 17} In Peachtree, a developer sought to develop a certain tract of land as a Community Unit Plan ("CUP"), which would require the land to be rezoned from Residence A-2 to CUP. The developer submitted its plan for the use and development of the land to the Board of County Commissioners of Hamilton County. The board approved the developer's CUP request, and referendum petitions were circulated and approved, thus placing the approval of the CUP on the ballot. The developer then filed an action in the common pleas court seeking, inter alia, a declaration that the resolution approving the CUP was not subject to referendum. The trial court held that CUP was a legislative act that was subject to a referendum, but the appeals court held that the county commissioners' approval of the CUP was administrative action, and as such, not subject to referendum. The Ohio Supreme Court agreed with the trial court, and held that the implementation of a CUP or a PUD, as well as its creation, is a legislative act subject to referendum because the board's approval of the CUP was the functional equivalent of altering the zoning classification.Id. at 351.
 {¶ 18} Similarly, in Crossman, the court addressed the nature of rezoning land to a PUD district. In that case, a developer applied to rezone a certain tract of land from AG, Agricultural District, to PD-1, Planned Residential District (or PUD). After extensive public hearings conducted by the Fairborn Planning Board and the Fairborn City Council, the city council enacted Resolution No. 3-99, which approved the developer's amended concept for the land and rezoned it from AG, Agricultural District, to PUD. City council then enacted Resolution No. 39-99, which approved the developer's preliminary development plan for the subject land. Several months later the final development plan for the subject land was approved by Resolution 59-99.
 {¶ 19} A referendum petition was filed seeking the voter's approval of the resolution approving the final development plans. The developer filed protests to the referendum with the board, arguing, among other things, that the petition was defective because Resolution 59-99 was not subject to referendum because it constituted an administrative action. The referendum petitioners and other property owners filed a mandamus action in the court of appeals, seeking a writ compelling the board of elections and city to submit Resolution 59-99 to the electors in the general election. The court of appeals issued an alternative writ ordering the board to perform its duties, and the board later held a quasi-judicial hearing. As a result of the hearing, the board placed the issue on the election ballot. The developers filed a writ of prohibition with the Ohio Supreme Court.
 {¶ 20} Citing to the Donnelly test, the Ohio Supreme Court held:
 "[I]n applying the foregoing test to zoning cases involving planned-unit development (`PUD'), we have held that `the implementation of a PUD, as well as its creation, is a legislative act subject to referendum' because the action of approving a plat is a functional equivalent of traditional legislative zoning, although the entire PUD area is covered by the same nominal zoning classification both before and after the approval of the plat." (Emphasis sic.) Id. at 136-137, citing Zonders, 69 Ohio St.3d at 11; Peachtree, 67 Ohio St.2d at 351; Gray, 38 Ohio St.2d at 314.
 {¶ 21} The Crossman court then concluded: "Resolution No. 59-99 constituted a referendable, legislative act because it implemented the PUD by approving the final development plan ***." Crossman,87 Ohio St.3d at 137.
 {¶ 22} The facts in the instant case are substantially the same facts as in Crossman. Here, the Lorain City Council initially enacted Ordinances Nos. 77-01 and 78-01 to rezone Martin's Run from R-1B "Residential" to R-PUD. Pursuant to Peachtree, this initial rezoning was a legislative act. Peachtree, 67 Ohio St.2d at 351; see, also, State ex rel. Way v. Zimmerman (July 27, 1983), 9th Dist. No. 11002, at 4 ("Rezoning is a legislative act which has been entrusted to a legislative body[.]") After the area was rezoned to R-PUD, the Lorain City Counsel then enacted Ordinances Nos. 212-01 and 5-02, 213-01 and 06-02, 42-02, 43-02, and 83-02, which, like Resolution No. 59-99 in Crossman, implemented the R-PUD by approving the final development plan.
 {¶ 23} Based upon the holdings in Peachtree and Crossman, we are constrained to conclude that the enactment of Ordinances Nos. 212-01 and 5-02, 213-01 and 06-02, 42-02, 43-02, and 83-02 were legislative acts, subject to referendum and nonappealable. Therefore, the trial court lacked subject matter jurisdiction to hear the matter.
 {¶ 24} LLD has argued that, even if the enactment of Ordinances Nos. 212-01 and 5-02, 213-01 and 06-02, 42-02, 43-02, and 83-02 was administrative, the trial court correctly dismissed the appeal because the Appellants did not have standing to appeal the decision of the Lorain City Council. LLD has contended that "[f]or this Court to find that [Appellants] had standing to bring the instant administrative appeal, it must find that the [Appellants] did substantively participate in the administrative proceedings below and that each has proven that he or she is a directly affected party." (Emphasis omitted.) In light of the fact that this Court has concluded that the enactment of Ordinances Nos. 212-01 and 5-02, 213-01 and 06-02, 42-02, 43-02, and 83-02 were legislative acts, and thus not appealable, we need not determine whether Appellants lacked standing to bring the administrative appeal.
 {¶ 25} Accordingly, Appellants' sole assignment of error lacks merit.
 III {¶ 26} Appellants' sole assignment of error is overruled. The judgment of the trial court is affirmed.
SLABY, P.J. and BATCHELDER, J. CONCUR.