JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, C.R. Green, L.P. ("appellant"), brings this appeal pursuant to a request for declaratory relief and request for damages under R.C. 2506. After a thorough review of the arguments of the parties, the record and relevant case law, this court finds merit in the appeal.
 {¶ 2} Appellant sought to operate a hair salon in an office building located on SOM Center Road in Mayfield Heights, Ohio. The office building is located in an area zoned as a planned office and restricted service district under Mayfield Heights city zoning code U-4-B. Pursuant to the Mayfield Heights city ordinance, the only permitted uses of this zoning area are banks and general financial offices. Retail establishments, as well as shops, are prohibited under the U-4-B zoning code.
 {¶ 3} On January 6, 2003, the appellant submitted to the Mayfield Heights City Planning Commission a request to operate a hair salon in the U-4-B zoning area. Following the appellant's presentation to the committee outlining its business proposal, the request was denied by a vote of three to two. On January 27, 2003, the Mayfield Heights city council ("council") overturned the decision of the City Planning Commission and approved the appellant's request. On February 4, 2003, the mayor vetoed the decision made by the council and denied the appellant's request to operate a hair salon in the U-4-B zoned area.
 {¶ 4} On March 24, 2003, the appellant filed a notice of appeal, pursuant to R.C. 2506. On May 21, 2003, the city of Mayfield Heights ("the city" or "appellee"), filed a motion to dismiss the appellant's appeal. The city further filed an answer to the appellant's complaint on September 18, 2003, and on December 22, 2003, it filed a motion for summary judgment. On January 22, 2004 and February 24, 2004, the appellant filed agreed requests for an extension of time to respond to the city's motion for summary judgment; both of which were granted, giving the appellant until April, 7, 2004, to respond. On April 8, 2004, the appellant filed its submission for determination on the record. In addition, after filing a motion to strike, which was not ruled upon, the city filed a reply to the appellant's submission on April 19, 2004. On May 3, 2004, the appellant filed a motion to set oral argument, and an oral argument was held before the trial court on March 24, 2004. On December 22, 2004, the trial court issued a judgment entry granting the city's motion for summary judgment. On January 21, 2005, the appellant filed this appeal citing six assignments of error for our review.
 {¶ 5} "I. The trial court erred in allowing a `veto' of Mayfield Heights City Council's interpretation of its zoning code, where that is an administrative determination by Council, and the Mayfield Heights Charter only permits veto of legislative action taken by ordinance or resolution."
 {¶ 6} Appellant claims the mayor's veto of its business proposal was invalid pursuant to the law set forth in the Ohio Constitution with respect to chartered municipalities. Article XVIII of the Ohio Constitution states that the powers of a chartered municipality and its officials are defined by the city's charter. Because Mayfield Heights is a chartered municipality, the rules set forth under its charter govern the actions of the city council. The Mayfield Heights city charter grants the council two distinct powers: powers which are administrative and powers which are legislative.
 {¶ 7} Peachtree Development Co. v. Paul (1981), 67 Ohio St.2d 345, citing State ex rel. Srovnal v. Linton (1976), 46 Ohio St.2d 207, establishes a standard for determining whether an action is legislative or administrative:
 {¶ 8} "The test for determining whether an action of the legislative body is legislative or administrative is whether the action taken is one enacting a law, ordinance, or regulation, or executing or administering a law, ordinance or regulation already in existence." Peachtree DevelopmentCo., supra.
 {¶ 9} Here, the council sought to interpret the meaning of the ordinance that controlled the appellant's ability to operate a hair salon in a specific location. In approving the appellant's proposal, the council looked to the zoning regulations to determine whether the proposal was permitted. In interpreting the language of the regulation, the council concluded that the appellant's proposal fell within the language parameters of the statute. When applying the test as set forth in Peachtree, it is clear that council's actions were administrative.
 {¶ 10} The appellee argues that, as a chartered municipality, the mayor has the power to veto ordinances and resolutions, and, in the case at bar, the council's actions were a resolution, subject to the veto power of the mayor. The appellant cites the Mayfield Heights city charter as support for its position. After a review of the city charter, it is clear that it does not give the mayor the power to veto an administrative act. Article III, Section 3(C) of the city charter proscribes the veto power of the mayor and states in pertinent part:
 {¶ 11} "Every ordinance or resolution of the council shall be presented to the mayor for consideration before it goes into effect. The Mayor, if he or she approves it, shall sign it and file it with the Clerk of Council. The Mayor may approve or disapprove the whole or any item of an ordinance appropriating money, but otherwise his or her approval shall be addressed to the entire resolution."
 {¶ 12} It is clear that the city charter gives the mayor the power to veto ordinances and resolutions; however, the case at bar concerns an administrative act. The language of the city charter is clear in that it does not give the mayor the power to veto administrative acts. Because council's actions were administrative in nature, the mayor erred when she exercised her veto power. Thus, the appellant's first assignment of error has merit.
 {¶ 13} "II. The trial court erred in allowing the mayor to override City Council's interpretation and application of its own zoning code, where no additional or different evidence (other than the record already relied on by council) was offered by the mayor to justify that act."
 {¶ 14} In its second assignment of error, appellant specifically argues that the mayor presented no additional information and provided no additional reasoning to support her decision to veto the conclusion reached by council. This court finds merit in the appellant's argument.
 {¶ 15} As stated above, council's decision to approve the appellant's business proposal was an administrative action. The mayor only has the power to veto ordinances and resolutions, not legislative or administrative actions. Here, the mayor made no additional findings that would support the appellee's contention that council's decision was an ordinance or resolution. Thus, the mayor erred when she improperly used her veto power, and the trial court erred when it affirmed the mayor's veto. Therefore, the appellant's second assignment of error is sustained.
 {¶ 16} "III. The trial court erred in overriding Council's determination that the subject property use is permitted under Mayfield Heights code, where there was no preponderance of reliable, probative, and substantial evidence to do so."
 {¶ 17} Here, appellant argues that the trial court erred in overriding council's determination that its proposed use of the property was permitted under the Mayfield Heights city code. The appellant asserts that the city provided no reliable, probative or substantial evidence to support the court's finding.
 {¶ 18} The Mayfield Heights U-4-B zoning classification distinguishes permitted and non-permitted uses for U-4-B zoned property and states:
 {¶ 19} "1174.01 Permitted Uses
 {¶ 20} "The following uses are permitted in a U-4-B District:
 {¶ 21} "(a) Banks, general offices, administrative offices, professional offices and financial offices; and
 {¶ 22} "(b) any use not specified and determined to be similar by the planing commission and confirmed by council majority.
 {¶ 23} "1174.02 Prohibited Uses
 {¶ 24} "The following uses are prohibited in a U-4-B District:
 {¶ 25} "(a) Retail stores or shops for the purpose of selling articles from the premises;
 {¶ 26} "(b) Restaurants, bars or other food service establishments;
 {¶ 27} "(c) Any automotive type services;
 {¶ 28} "(d) Medical and dental offices; and
 {¶ 29} "(e) Any use as determined by the planning commission and confirmed by council majority as not meeting the purpose and intent as specified in section 1174.01"
 {¶ 30} It is clear from the language of the U-4-B zoning code that the appellant's business proposal falls well within the permitted uses. The U-4-B zoning code clearly states that professional offices are permitted. The appellant's proposal of a hair salon falls well within the meaning of a professional office. Hair salons are regulated by the state of Ohio and must be licensed by the state. In order to work as a hairstylist, one must receive specialized training and must undergo testing to receive a license from the state. In addition to the educational and licensing requirements, hairstylists and barbers are required to undertake periodic training in new techniques and procedures in order to maintain their license. It is clear from the stringent requirements that hairstylists are required to meet that a hair salon as an operation fits within the parameters of a professional office. In addition, when presenting its business proposal, the appellant made it clear that there was no intent to sell hair products or any other merchandise on the premises of the salon, thus the hair salon would in no way serve as a retail operation. In opposition, the appellee provided no additional evidence to support its position that the appellant's business proposal was a non-permitted use; they also failed to provide any evidence that the appellant intended to operate a retail establishment.
 {¶ 31} The arguments of the parties, as well as the facts presented, dictate that the appellant's proposal fits within the definition of a professional office and that it does not intend to operate a retail establishment. Thus, the appellant's third assignment of error has merit.
 {¶ 32} "IV. The trial court erred in treating this proceeding as a summary judgment matter, where Ohio law prohibits the trial court from doing so."
 {¶ 33} On December 22, 2003, the appellee filed a motion for summary judgment with the trial court. After the trial court heard oral arguments regarding the case at bar, it granted the appellee's motion for summary judgment. We find that the trial court's actions were improper.
 {¶ 34} The appellee's basis for its motion for summary judgment was that the appellant did not make an adequate showing of damages and that summary judgment is proper in such an instance. Although the appellee is correct in its knowledge of the law regarding summary judgment, its application to the case at bar is incorrect.
 {¶ 35} The appellant made a finding of damages amounting to $107,970, arguing that it was wrongfully denied the use of the property at issue and, as a result, suffered damages. This court has found that the mayor erred when she vetoed the appellant's business proposal; therefore, as a result of that improper action, the appellant suffered damages from its inability to operate a business in a zoned area where it lawfully should have been able to operate. The appellant has fulfilled its obligation by making an adequate showing of damages. Thus, the trial court erred when it granted summary judgment on behalf of the city.
 {¶ 36} "V. The trial court erred in refusing to consider the filed deposition of David B. Hartt, and the filed hearing submission, which were both filed prior to the date of hearing, as directed by the trial court in its July 22, 2004 entry."
 {¶ 37} Here, the appellant argues that the trial court erred when it failed to admit the deposition of David B. Hartt since it was properly filed. The appellant asserts that the submission and deposition of David B. Hartt were both filed before the court-mandated deadline and, thus, were properly admissible. The appellee argues that the appellant's submission was filed on April 8, 2004; however, Hartt's deposition was never filed.
 {¶ 38} Although the appellee asserts that the deposition was never filed, the appellant has presented evidence that, not only was Hartt's deposition filed, but the appellee relied upon the deposition, thus providing additional support for the contention that it was, in fact, filed. The appellant attached the deposition to the submission, but neglected to include a cover page indicating that the submission also contained a copy of the deposition. It is clear that, although the deposition was not properly labeled, the appellant did, in fact, file the deposition; therefore, it should have been admissible. Thus, the appellants' fifth assignment of error has merit.
 {¶ 39} "VI. The trial court erred in refusing to award any damages to plaintiff, despite the record being uncontradicted regarding the damages suffered by plaintiff and their amount."
 {¶ 40} Appellant asserts that the record was uncontradicted regarding damages, thus, the trial court's actions were improper with respect to damages. As stated above, in assignment of error five, the appellant made an adequate showing of damages. The mayor's veto was improper and, as a result, deprived the appellant of an opportunity to operate a business in a zoned area where it had every right to do so. Because the appellant was deprived of an opportunity to pursue its business venture, it suffered damages in the amount of $107,970. The appellant's damages were adequately presented, entitling it to a damage award. Thus, the appellant's sixth assignment of error has merit.
Judgment reversed and remanded.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellee costs herein.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Calabrese, Jr., J., concurs;
 McMonagle, J., concurs and Dissents (With Separate Opinion).
 CONCURRING AND DISSENTING OPINION