OPINION
{¶ 1} This matter comes to us on administrative appeal to the Mahoning County Court of Common Pleas from a decision of Appellee, the Boardman Township Board of Zoning Appeals, hereinafter the "Board." The Board unanimously granted a conditional use permit to Appellee, Carmen M. Lofaro, to build a planned-unit development ("PUD") consisting of eight duplex condominiums on Matthews Road, in Boardman Township, Ohio. This permit request was necessary because the property was zoned "Residential-2". As such, the zoning did not sanction some aspects of Lofaro's proposed development.
 {¶ 2} Appellants, David and Barbara Yarab, are neighbors immediately adjacent to this proposed development. Appellants timely appealed the Board's decision authorizing the conditional use permit to the common pleas court. Their appeal was heard by a Mahoning County Court of Common Pleas Magistrate. He affirmed the Board's decision. Appellants filed two objections to the Magistrate's decision and, following a hearing, the common pleas court overruled the objections and adopted the Magistrate's decision in its entirety on November 4, 2004. Appellants timely appealed to this Court.
 {¶ 3} Appellants raise two assignments of error on appeal. They argue that the Boardman Township Zoning Ordinance contains an unconstitutional delegation of authority and that the Board's decision was not supported by the preponderance of the evidence. For the following reasons, however, Appellants' assignments lack merit and the decision of the common pleas court is affirmed.
 {¶ 4} Appellants' first assignment of error states:
 {¶ 5} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN:
 {¶ 6} "a. Failing To Find And Determine That Article III Of The Boardman Township Zoning Ordinance Relating To Planned Unit Development (PUD) Constitutes An Unconstitutional And Unlawful Delegation Of Legislative Authority For Failure To Provide Standards Or Guidelines With No Provision For Amendment Of The Zoning Ordinance.
 {¶ 7} "b. Failing To Address Appellants' Objection No. 1 To The Magistrate's Determination Regarding The Unconstitutional And Unlawful Delegation Of Legislative Authority Exercised By The Boardman Township Board Of Zoning Appeals.
 {¶ 8} "c. Determining That There Was No Error Of Law Or Other Defect In The Magistrate's Decision."
 {¶ 9} R.C. § 2506.04 governs administrative appeals from a board of zoning appeals decision. It provides, in part:
 {¶ 10} "The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. * * *"
 {¶ 11} When reviewing a zoning board's decision, the common pleas court applies the law to the evidence that was presented to the board, but must act as the finder of fact regarding any new evidence. Then, reviewing the entire record, the court must determine whether the board's decision was unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. Hebeler v. Colerain Twp. Bd. of Zoning Appeals
(1997), 116 Ohio App.3d 182, 687 N.E.2d 324.
 {¶ 12} A court of common pleas should presume that the administrative agency's decision is reasonable and valid. EssrocMaterials, Inc. v. Poland Twp. Bd. of Zoning Appeals (1997),117 Ohio App.3d 456, 462, 690 N.E.2d 964, motion to certify denied 1997 WL 94220, appeal not allowed 78 Ohio St.3d 1516,679 N.E.2d 311; C. Miller Chevrolet v. Willoughby Hills (1974),38 Ohio St.2d 298, 313 N.E.2d 400, paragraph two of the syllabus. The party appealing the determination has the burden of showing the invalidity of the board's decision. Id.
 {¶ 13} As earlier stated, the Boardman Township Board of Zoning Appeals granted Appellee Lofaro a conditional use permit for his proposed development of a PUD in a "Residence R-2 District". Appellants argue, however, that this decision was unlawful since the Boardman Township Zoning Ordinance relating to PUDs constitutes an unlawful delegation of legislative authority. Appellants claim that the Boardman Township Zoning Ordinance fails to establish standards for PUDs and fails to provide for an amendment of the zoning map contrary to R.C. § 519.021.
 {¶ 14} Article III of the Boardman Township Zoning Ordinance defines a PUD as,
 {¶ 15} "An area of land in which a variety of housing types and subordinate business, commercial and industrial facilities are accommodated in a pre-planned environment under more flexible standards, such as lot sizes and setbacks, than those restrictions that would normally apply under these regulations. The procedure for approval of such development contains requirements in addition to those of the standard subdivision, such as building design principles and landscaping plans. All Planned Unit Developments must go before the Zoning Board of Appeals."
 {¶ 16} The Ohio Revised Code defines a PUD as a, "development which is planned to integrate, residential, commercial, industrial, or any other use." R.C. § 519.021(C). R.C. §519.021(A)-(C) provide three specific methods by which a PUD may be developed.
 {¶ 17} R.C. § 519.021(A) provides in part that a, "board of township trustees may adopt planned-unit regulations that do not apply to any property," but that will apply to future PUDs. Then, any property owner seeking a PUD may seek a zoning map amendment via R.C. § 519.12 to have their property rezoned as a PUD.
 {¶ 18} R.C. § 519.021(B) provides that township trustees may create a PUD upon the application by a property owner, and pursuant to R.C. § 519.12, designate the property a PUD. At the same time, the trustees or township zoning commission should adopt regulations that apply only to that PUD.
 {¶ 19} Finally, R.C. § 519.021(C) authorizes trustees to adopt PUD regulations and amend the zoning map via R.C. § 519.12
to include PUDs before a property owner submits an application for a PUD. Thereafter, however, and in a separate paragraph, R.C. § 519.021(C) provides:
 {¶ 20} "Nothing in this section prevents a board of township trustees from authorizing a planned-unit development as a conditional use in the zoning resolution pursuant to section519.14 of the Revised Code."
 {¶ 21} R.C. § 519.14(C) provides that the township board of zoning appeals may: "[g]rant conditional zoning certificates for the use of land, buildings, or other structures if such certificates for specific uses are provided for in the zoning resolution."
 {¶ 22} As Appellants point out, each specific method in R.C. § 519.021(A)-(C) for developing a PUD requires the adoption of PUD standards and regulations. Each also refers to R.C. § 519.12, which provides that an amendment to the zoning resolution requires a hearing and the opportunity for electors to call for a referendum.
 {¶ 23} In the instant case, the Board did not rezone the subject property in accordance with R.C. § 519.12. Thus, Appellants allege that the creation of the PUD in the instant case was in error. However, Appellants failed to recognize the importance of the language in R.C. § 519.021(C) that authorizes the creation of a PUD through a conditional use permit if this method is provided for in the applicable ordinance. This is precisely what occurred in the instant matter; Appellee Lofaro obtained a conditional use certificate for his PUD as provided for in the Boardman Township Zoning Ordinance. Contrary to Appellant's arguments, the language authorizing creation of a PUD through a conditional use certificate does not require an amendment to the zoning map or compliance with R.C. § 519.12.
 {¶ 24} Conversely, the fact that a PUD applicant satisfies zoning resolution requirements does not obligate a Board to issue a conditional use certificate. Essroc, supra. Instead, the issuance of a conditional use permit must be based on the compatibility of the proposed use. Id.
 {¶ 25} The fact that Appellee Lofaro was issued a conditional use permit is significant in that it, "authorizes a use which is permitted by zoning regulations, subject to the issuance of such a permit or conditional certificate." Nunamaker v. Bd. of ZoningAppeals (1982), 2 Ohio St.3d 115, 118, 2 Ohio St.3d 115, quoting, Boston v. Montville Twp. Zoning Bd. of Appeals (1972),32 Ohio Misc. 118, 120-121, 289 N.E.2d 184. A conditional use permit differs from a variance because a variance allows a landowner to use his property in a manner that is prohibited by the zoning regulations. Id. The property at issue herein is zoned "Residence R-2 District" which authorizes single-family and multiple family dwellings for no more than six families. (Boardman Twp. Zoning Ord. Article VII, Section A.) Appellee Lofaro's proposed PUD involved a residential use for multiple family dwellings. Thus, a decision to allow this use maintained the residential nature of the district.
 {¶ 26} Further, Appellee Lofaro's conditional use permit was approved under Article XII-Exceptions and Special Provisions of the Boardman Township Zoning Ordinance. It provides in part,
 {¶ 27} "A. CONDITIONAL/SPECIAL USES PERMITTED
 {¶ 28} "The Zoning Board of Appeals as hereinafter created may authorize the issuance of a conditional/special use permit for any of the following buildings or uses in any district:
 {¶ 29} "* * *
 {¶ 30} "4. Planned Unit Developments."
 {¶ 31} The PUD in the instant matter was applied for through the township's conditional use section contained in its zoning ordinance. As earlier stated, this section was authorized pursuant to R.C. §§ 519.021(C) and 519.14(C). The Board of Zoning Appeals in this case approved Appellee Lofaro's conditional use permit for a PUD. The Board held the requisite hearing and approved the requested permit with two stipulations or conditions. First, Appellee had to submit storm water retention/detention drawings and calculations and have these approved prior to construction. Secondly, Appellee had to construct a landscape buffer within a designated time. (Appellants' Notice of Appeal, Exh. 1.)
 {¶ 32} Despite this apparent compliance with the ordinance, our review is not at an end. Appellants also challenge the constitutionality of the Boardman Township Zoning Ordinance. Specifically, Appellants argue that Articles III and XII of the ordinance regarding PUDs are unconstitutional because the authority delegated to the Board of Zoning Appeals lacks sufficient standards in guiding the Board's exercise of power. As a result, Appellants argue that the ordinance essentially confers legislative authority to the Board.
 {¶ 33} We must initially stress that when an appellate court assesses the constitutionality of a zoning ordinance, it must begin with the strong presumption that the ordinance is valid.Central Motors v. Pepper Pike (1995), 73 Ohio St.3d 581,653 N.E.2d 639. The party challenging the zoning ordinance has the burden of proving that it is unconstitutional. Id.
 {¶ 34} Further, zoning ordinances must be strictly construed against those seeking to restrict the use of property, since zoning ordinances are in derogation of common law. WhitecoMetrocom v. Columbus (1994), 94 Ohio App.3d 185, 190,640 N.E.2d 563, 566-567. "[L]anguage defining a `permitted use' is to be liberally construed in favor of permitting the use proposed by the owner." Rotellini v. West Carrollton Bd. of Zoning Appeals
(1989), 64 Ohio App.3d 17, 21, 580 N.E.2d 500, 503, citing Stateex rel. Spiccia v. Abate (1964), 6 Ohio App.2d 233,217 N.E.2d 709.
 {¶ 35} Again, the ordinance at issue includes the definition of a PUD as set forth in Article III:
 {¶ 36} "An area of land in which a variety of housing types and subordinate business, commercial and industrial facilities are accommodated in a pre-planned environment under more flexible standards, such as lot sizes and setbacks, than those restrictions that would normally apply under these regulations. The procedure for approval of such development contains requirements in addition to those of the standard subdivision, such as building design principles and landscaping plans. All Planned Unit Developments must go before the Zoning Board of Appeals."
 {¶ 37} The Board's standards for establishing a conditional use PUD are also set forth in the ordinance at Article XII entitled "Exceptions and Special Provisions" which provides,
 {¶ 38} "Such special permits, however, may be authorized by the Zoning Board of Appeals only upon satisfaction in each instance of such conditions as to general character, height and use of structure, the provisions of surrounding open space and treatment of the grounds and as to street capacity and use, asin the opinion of the Board may be necessary to safeguard public health, comfort and convenience, and as may be required for the preservation of the general character of the neighborhood in which such building is to be placed or such use is to be conducted." (Emphasis added.)
 {¶ 39} The Ohio Supreme Court has addressed the issue of unlawful delegation of legislative authority to some extent: "The test for determining whether the action of a legislative body is legislative or administrative is whether the action taken is one enacting a law, ordinance or regulation, or executing or administering a law, ordinance or regulation already in existence." Donnelly v. Fairview Park (1968), 13 Ohio St.2d 1,233 N.E.2d 500, paragraph two of the syllabus.
 {¶ 40} In Peachtree Development Co. v. Paul (1981),67 Ohio St.2d 345, 423 N.E.2d 1087, the Ohio Supreme considered a Community-Unit Plan ("CUP") and concluded that the county commissioners acted unlawfully in approving the plan, stating that the zoning board, "acted in a legislative manner since the board's action was the functional equivalent of altering the zoning classification of a sizable section," of the township. Id. at 351. In making this decision, the Peachtree Court analyzed the differences between the area's prior restrictions and uses and the new approved uses:
 {¶ 41} "Before the subject tract was designated as a CUP, the land was zoned for single-family residential use with each lot containing a minimum of 14,000 square feet with, inter alia,
side yards of at least 10 feet and front and rear yards of at least 40 and 35 feet, respectively. [The new] CUP as modified and approved by the board, provided for 87 single-family homes on lots of 12,000 square feet, 56 single-family homes in `clusters' on lots of 7,500 square feet, 136 single-family homes on lots of 7,500 square feet (with no side yard on one side), and 136 multi-family condominium units in groupings of various sizes. The CUP also provided for a retail-commercial area of approximately four acres." Id. at 351-352. Thus, the CUP introduced multiple family and retail/commercial use and drastically altered the way the buildings were situated upon the parcels.
 {¶ 42} Based on the foregoing, the Ohio Supreme Court concluded that the foregoing changes effectively and for all practical purposes constituted a zoning change of the area. Id. It noted that the preexisting classification of this area, "remained in name only." Id. at 352. The Court concluded that this was an unconstitutional legislative act on the part of the zoning board.
 {¶ 43} The facts in the instant matter, however, are easily distinguishable from Peachtree. As previously noted, the district at issue in this matter was zoned R-2, which by definition allows two-family and multiple-family dwellings. It also specifically authorizes dwellings for not more than six families. (Boardman Twp. Zoning Ord. Article VII, Section A.)
 {¶ 44} Appellee Lofaro's PUD request proposed eight, two-family duplexes on approximately 2.65 acres. The residential use was authorized by the R-2 designation and the PUD was to be entirely residential in nature. Unlike the CUP at issue inPeachtree, Lofaro's proposed PUD totally maintained the residential zoning designation of the area. The PUD requested sixteen family units in total. Two of the eight duplexes were to have 980 square feet of living space and the remaining six were to have 1,200 square feet. The R-2 designation requires a minimum of 1,200 square feet of, "livable area per unit." This meant that only two of the proposed duplexes were under the standard minimum. (Article VII, Section B.)
 {¶ 45} In addition to the two units that were proposed to be built with less livable square feet, Appellee Lofaro's proposal did not fully comply with the minimum area of frontage and side and rear yards set forth in the R-2 designation. Notwithstanding, the conditional use permit was granted. This approval was gained in accordance with the Boardman Township Zoning Ordinance since the Board held the requisite public hearing and, pursuant to the ordinance, considered the concerns of the surrounding neighbors about the, "general character, height and use of structure, the provisions of surrounding open space and treatment of the grounds and as to street capacity and use, as in the opinion of the Board may be necessary to safeguard public health, comfort and convenience, and as may be required for the preservation of the general character of the neighborhood in which such building is to be placed or such use is to be conducted." (Article XII, Section A(6).) Thus, these slight deviations from the designated R-2 minimums were validly permitted by the Board following hearing.
 {¶ 46} Appellants argue that the delegation of authority to the Board to grant deviations for a PUD lacked sufficient guidelines to such an extent that the ordinance entirely delegated the trustees' legislative power over the matter. Appellants argue that the PUD standards set forth in the ordinance are vague and leave too much discretion to the Board.
 {¶ 47} However, as the common pleas court points out, the inclusion of general intent language empowering an agency to make zoning decisions does not constitute the unconstitutional delegation of authority. Rothstein v. Athens City Bd. of ZoningAppeals (Feb. 6, 1995), 4th Dist. No. 94CA1611, 4. An agency may be delegated discretion so long as it is provided the necessary guidance. Sherman v. Dayton Bd. of Zoning Appeals (1992),84 Ohio App.3d 223, 225, 616 N.E.2d 937.
 {¶ 48} A review of the ordinance in question, when viewed in its entirety, leads us to the determination that all necessary guidance was, in fact, provided. Again, the R-2 designation sets forth the specific authorized uses, and is limited to residential use. The ordinance's definition of a PUD provides for standards, albeit flexible standards. The definition specifically refers to lot size, setbacks, building designs, and landscaping plans. Further, the conditional use permit provision explains its purpose in preserving, "the general character of the neighborhood" as well as safeguarding public health, comfort, and convenience. (Article XII, Section A.) While it appears that Appellants seek to have an absolute listing of all possible factors which might be involved in a request for a PUD and an enumeration of every conceivable standard, this is neither required by law nor practicable. The ordinance in question provides, in general, parameters within which a request for a PUD may be made and granted. After this, it gives the Board limited discretion to allow certain conditional changes to the existing rules based on the character of the neighborhood and public health, comfort and convenience. While these may not be the exhaustive listing of guidelines Appellants desire, they are neither vague nor without structure and certainly provide a clear framework within which the Board may grant or deny a conditional use.
 {¶ 49} At the initial hearing, the neighboring property owners raised concerns about storm water runoff, noise, and lights. The Board responded by requiring the installation of an adequate landscape barrier and a water retention/detention plan. Further, the Board emphasized the fact that the property at issue herein, as zoned, permitted the construction of apartment buildings. The Board repeatedly mentioned this fact and indicated that the proposed condominiums found in Lofaro's PUD would develop this property to its, "fullest reasonable potential." (April 23, 2003, Boardman Zoning Board of Appeals Hearing, pp. 20, 21, 30.) Thereafter, the PUD was approved.
 {¶ 50} Appellants argue that the trial court judge acknowledged the constitutional problems with this ordinance. At the hearing involving objections to the magistrate's decision, the trial judge stated:
 {¶ 51} "Does that excuse them [the Trustees] from applying any standards, any measurable standards? The objection here seems to be pretty clear that there's absolutely no control over what the Board of Zoning Appeals does once something's determined to be a PUD. They can do whatever they like in their opinion, and it's not subject to review by anybody." (Nov. 4, 2004, Objections Hearing, pp. 27-28.)
 {¶ 52} However, as Appellees correctly argue, the judge's statements are not evidence. Further, it appears from the record that the judge's statement was simply an attempt to summarize Appellants' concerns and to play the devil's advocate during the hearing. Thus, the statements are of no legal consequence.
 {¶ 53} In any event, the record reflects that the designated factors the Board needed to address when deciding to grant minor deviations for a PUD from standard rules, factors which include the physical parameters of the proposed structure(s) as well as the best interest of the community, do not rise to the level of an unconstitutional delegation of legislative authority. The record here reflects that the approved plan did not significantly deviate from the current zoning standards. The ordinance appropriately guided the Board's decision, and the Board was merely, "administering * * * [an] ordinance * * * already in existence;" not legislating. Donnelly, supra. Based on the foregoing, Appellants' first assignment of error lacks merit.
 {¶ 54} In Appellants' second assignment of error they assert:
 {¶ 55} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO FIND THAT THE DECISION OF THE BOARD OF ZONING APPEALS WAS NOT SUPPORTED BY THE PREPONDERANCE OF SUBSTANTIAL, RELIABLE AND PROBATIVE EVIDENCE ON THE WHOLE RECORD AND THAT IT WAS ARBITRARY AND UNREASONABLE."
 {¶ 56} An administrative appeal from a township board of zoning appeals is limited in scope. The standard of review requires an appellate court to affirm the common pleas court's decision unless the court of appeals concludes that the decision was not supported by the preponderance of reliable, probative, and substantial evidence. John O. Clay Exploration v. LawrenceTwp. Bd. of Zoning Appeals (1995) 108 Ohio App.3d 164,670 N.E.2d 483, appeal not allowed 76 Ohio St.3d 1409,666 N.E.2d 568.
 {¶ 57} As discussed in Appellants' first assignment of error, the evidence in this case fully supported the Board's decision to grant the conditional use permit for the PUD. Again, the Boardman Township Zoning Ordinance permitted the conditional use as long as the Board considered and addressed certain designated concerns, including the physical aspects of the building and the preservation of the general character of the neighborhood. The Board held the requisite public hearing, and thereafter approved the permit on two conditions, which were intended to address neighbors' concerns and preserve the health and safety of the neighborhood. (May 13, 2003, Boardman Zoning Board of Appeals Hearing, pp. 6-7.) Further, the Board also indicated that this PUD proposal would more fully develop this property to its, "fullest reasonable potential," as opposed to the construction of apartment buildings, which could have been built within the current zoning parameters. (April 23, 2003, Boardman Zoning Board of Appeals Hearing, pp. 20, 21, 30.)
 {¶ 58} Accordingly, the Board's decision was supported by the preponderance of reliable, probative, and substantial evidence. Thus, Appellant's second assignment of error lacks merit and the trial court's decision is hereby affirmed in its entirety.
Vukovich, J., concurs.
DeGenaro, J., concurs.