[Cite as *Cavanaugh Ents. v. Steubenville Planning & Community Dev. Office*, 2026-Ohio-228.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
JEFFERSON COUNTY

CAVANAUGH ENTERPRISES,

Appellee,

v.

CITY OF STEUBENVILLE PLANNING & COMMUNITY DEVELOPMENT
OFFICE ET AL.,

Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 JE 0010

---

Civil Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 24 CV 447

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Jake Michael Linn,* for Appellee and

*Atty. Costa D. Mastros,* Law Director, City of Steubenville*, and *Atty. Bernard C. Battistel,* Assistant Law Director, for Appellant.


Dated:  January 26, 2026

**DICKEY, J.**

{¶1} Appellant, City of Steubenville ("City"), appeals the June 12, 2025 decision of the Jefferson County Court of Common Pleas vacating the decision of the Planning and Zoning Commission ("Commission"), in which the Commission approved a conditional use application filed by 1439 Sunset Blvd, Ltd. ("1439"). 1439 requested approval for a "multi-family development consisting of up to fifty (50) units" with respect to the parcels that comprise 1439 Sunset Boulevard, Steubenville, Ohio ("Property").

{¶2} In its sole assignment of error, the City contends the common pleas court erred in finding the Commission exceeded its statutory authority in approving the conditional use application. The common pleas court opined the practical effect of the Commission's decision was the approval of an apartment building in a commercial district, which constituted a rezoning of the Property. Because amendments to the zoning code are within the exclusive authority of the City Council, the common pleas court concluded the Commission's decision was illegal. Finding no reversible error, the decision of the common pleas court is affirmed.

## FACTS AND PROCEDURAL HISTORY

{¶3} On August 8, 2024, 1439 filed an application for conditional use with the Commission for the Property. The proposed use was "a multi-family development consisting of up to fifty (50) units." When asked to describe any new buildings or alterations to be performed, 1439 responded, "[e]ither a new construction building, adaptive reuse, or combination of the two. The existing building will remain, regardless of the end product." The common pleas court referred to the existing building on the Property as the former Brandt Motors/D'Anniballe building. The existing building is four (4) stories in height.

{¶4} There is no dispute that the Property is located in a B-2 district, characterized as a "community commercial district" in the City of Steubenville Codified Ordinances ("Ordinances"). According to the Ordinances, "[t]he purpose of the 'B-2' District is to accommodate intensive commercial activities which generate high levels of vehicular traffic. [A B-2] district is designed for those commercial facilities which are

strongly highway oriented and which prefer maximum exposure to the traveling public." Ordinance 1151.01 ("B-2 district ordinance").

{¶5}   Two definitions taken from Ordinances are relevant to this appeal. "Apartment building" is not defined.  However, "apartment" is defined as:

> [O]ne (1) or more rooms in a building designed and intended for occupancy as a dwelling unit separate from other dwelling units or other parts of the building. This definition includes apartments in apartment buildings or garden apartments, residential hotels or efficiency apartments. Conversion apartments and garage apartments are not included in this definition.

Ordinance 1133.03(a)(35).

{¶6}   "Apartment, garden" is defined as "a multi-family structure two (2) or three (3) stories in height and containing one (1) story dwelling units, under single ownership." Ordinance 1133.03(a)(37).

{¶7}   The resolution of this appeal turns on the statutory authority of the Commission to authorize the use of the Property for a "multi-family development consisting of up to fifty (50) units" in a B-2 district.  It is undisputed that "apartment building" is not among the permitted or conditional uses in a B-2 district, which contains exclusively commercial enterprises. "Apartment buildings" are a permitted use exclusively in an R-3 district, described as a "high-density residential district."  Even R-3A districts, described as suburban high-density residential districts, permit only garden apartments.

{¶8}   However, subsection (a) of Ordinance 1151.02, which provides the permitted uses in a B-2 district, includes "[a]ll uses as permitted and regulated in the 'R-2' Medium Density Residential District."  "Garden apartment" is a conditional use in an R-2 district.  The parties concede a B-2 district may contain garden apartments.

{¶9}   A letter to the Steubenville Planning and Community Development Office from Woda Cooper Companies, Inc. ["Woda"], the developer of the Property, dated August 8, 2024, accompanied the conditional use application and reads in relevant part:

[1439] is writing you to request a conditional use permit for 1439 Sunset Blvd, Steubenville, Ohio the with [sic] Jefferson County parcel identification numbers [ ], and address of 1439 Sunset Blvd with the current zoning of B-2 to allow for uses under R-2. The desire is to develop no more than 50 units of affordable multifamily housing using the existing building and potentially new construction on site. The existing building will not be demolished as a result of any development on the site. [1439] authorizes [Woda] as their acting agent [Joseph DiCesare] for this conditional use permit.

**{¶10}** A public hearing on the application was held by the Commission on September 9, 2024. Although four of six City Council members attended and/or participated in the hearing, it is important to note they were attendees, without any authority to approve or reject the pending conditional use application.

**{¶11}** DiCesare appeared at the hearing on behalf of Woda. DiCesare explained there would be ten two-bedroom units and 29 one-bedroom units, not 50, as "[Woda] didn't know how many [units] [Woda] could fit in there at the time [Woda] submitted [the application]." According to DiCesare, 1439 intended to apply for funding and low-income housing tax credits through the Ohio Housing Finance Agency ("OHFA"), as well as historic preservation tax credits based on the adaptive reuse of the former Brandt Motors/D'Anniballe building.

**{¶12}** The statutory interpretation issue at the center of this appeal was neither addressed nor raised at the hearing. The main topic of discussion was the potentially deleterious effect that the addition of low-income housing would have on the business district.

**{¶13}** All parties at the hearing conceded conditional use approvals are not reviewed by the Board of Zoning Appeals or City Council. Appeals of the decision of the Commission regarding applications for conditional use are to be made to the Common Pleas Court of Jefferson County. Ordinance 1191.02(f). However, a variance approved by the Commission is reviewable by the Board of Zoning Appeals and City Council. Ordinance 1189.08. Further, while the Commission makes findings regarding proposed

amendments to the zoning code or map, City Council has the exclusive power to approve or disapprove proposed amendments. Ordinance 1191.03(f).

{¶14} Pursuant to Ordinance 1191.01, the Commission "shall review conditional use applications, proposed amendments to the Zoning Code or Map, and applications for uses unprovided for, as well as exercise those other powers and perform those other duties as specified by Ohio Revised Code and City Ordinances." Upon application and after a public hearing the Commission "may authorize the issuance of a zoning approval for any of the conditional uses for which [the] Zoning Code requires such, in the district in which such use is proposed to be located." Ordinance 1191.02(a).

{¶15} In considering any such use, the Commission is required to take into consideration "the public health, safety and welfare, the comfort and convenience of the public in general and of the residents of the immediate neighborhood in particular, and may prescribe appropriate conditions and safeguards as may be required in order that the result of its action may, to the maximum extent possible, further the expressed intent of [the] Zoning Code." *Id.* Relevant to the current appeal, the Commission must further the objective that the proposed use be "of such location, size and character that it will generally be in harmony with the appropriate and orderly development of the district in which it is proposed to be situated and will not be detrimental to the orderly development of adjacent properties in accordance with the zoning classification of such properties." Ordinance 1191.02(a)(2).

{¶16} Significantly, "[a]ny use not listed as a permitted or conditional use for any zoning district shall be deemed to be prohibited in such district." Ordinance 1191.04. The parties concede a B-2 district may not contain apartment buildings.

{¶17} Following the hearing, the Commission approved the conditional use application subject to the following conditions: (1) any exterior lighting must be directed away from nearby residences; (2) any dumpster must be placed in a secure location within a dumpster enclosure; and (3) any necessary variance is being approved by the Board of Zoning Appeals.

{¶18} Cavanaugh Enterprises ("Cavanaugh"), which owns property in the area, filed an appeal of the Commission's decision to the common pleas court. A motion to dismiss was filed by the City, as 1439 was unable to obtain funding from the OHFA and

Woda had terminated site control of the property. Following full briefing and oral argument on the motion to dismiss, the common pleas court overruled the motion finding the matter was not moot as 1439 "still [held] a conditional use for the property." (2/19/25 J.E., p. 1.)

{¶19} At oral argument on the merits of the appeal in the common pleas court, Cavanaugh argued the Commission's decision was unlawful as it constituted a rezoning of a B-2 district. Cavanaugh conceded a garden apartment is a conditional use in an R-2 district, and is imported as a permitted use in a B-2 district by virtue of Ordinance 1151.02(a). However, Cavanaugh asserted the conditional use application did not request approval of the construction of garden apartments, but rather an apartment building.

{¶20} Cavanaugh observed all garden apartments are apartments, but not all apartments are garden apartments. Because the former Brandt Motors/D'Anniballe building is greater than a "structure two (2) or three (3) stories in height," and the Commission approved the adaptive reuse of the building, Cavanaugh asserted the Commission's decision is unlawful as it approves an apartment building in a B-2 district.

{¶21} Cavanaugh argued in the alternative that the Commission's decision constitutes the approval of a variance rather than a conditional use. We recognized the distinction in *Yarab v. Boardman Twp. Bd. of Zoning Appeals*, 2006-Ohio-3565, ¶ 25 (7th Dist.):

> [A] conditional use permit is significant in that it, "authorizes a use which is permitted by zoning regulations, subject to the issuance of such a permit or conditional certificate." *Nunamaker v. Bd. of Zoning Appeals* (1982), 2 Ohio St.3d 115, 118, 443 N.E.2d 172, 2 Ohio St.3d 115, quoting, *Boston v. Montville Twp. Zoning Bd. of Appeals* (1972), 32 Ohio Misc. 118, 120-121, 289 N.E.2d 184. A conditional use permit differs from a variance because a variance allows a landowner to use his property in a manner that is prohibited by the zoning regulations. *Id.*

*Yarab* at ¶ 25.

{¶22} Cavanaugh asserted a variance requires evidence of hardship, an evidentiary burden that 1439 circumvented by mischaracterizing their application as one

for a conditional use. "Unnecessary hardship occurs when a particular parcel of land is left without any economically feasible permitted use because of specific qualities of the property." *Basista Holdings, LLC v. Ellsworth Twp.*, 2017-Ohio-9375, ¶ 38 (7th Dist.) A claim that a parcel would be more valuable with the variance than without it is not sufficient to justify a variance. *Id.* The burden is on the party seeking the variance to demonstrate that an undue hardship exists. *Id.* Ordinance 1189.06(b) provides, "[a] variance shall not be granted where the unusual hardship for which the variance is sought has been created by the appellant or as a corrective measure where a violation of this Zoning Code has occurred." Cavanaugh further asserted 1439's mischaracterization of the variance as a conditional use allowed 1439 to circumvent review by the Zoning Board of Appeals and City Council.

{¶23} Finally, Cavanaugh cautioned the common pleas court that 1439 could request a variance in the future and argue hardship based on the ambiguity of the Commission's decision granting the conditional use. In other words, 1439 can argue it justifiably relied on the reasonable interpretation that the Commission's decision authorized a four-story apartment building. Cavanaugh predicated the foregoing argument on the ambiguity of the phrase "multi-family development" in the conditional use application and 1439's general response regarding construction in the application, that is, "[e]ither a new construction building, adaptive reuse, or combination of the two."

{¶24} The City countered 1439 had many options as a consequence of the conditional use approval that would not result in a violation of the Ordinances. The City asserted 1439 could build a new three-story structure or could convert the existing structure to three stories of apartments and one floor to commercial space.

{¶25} However, the common pleas court expressed concern regarding the inexactitude of the application, as it approved new construction, adaptive reuse, or a combination of the two. Further adding to the lack of clarity, the common pleas court observed the proposed use, a "multi-family development" could be interpreted to include apartments that are not garden apartments (a use in violation of the B-2 district ordinance) or garden apartments (a permitted conditional use authorized by the B-2 district ordinance).

{¶26} Next, the City argued the number of floors relates to the area of the former Brandt Motors/D'Anniballe building not the use. We explained the distinction of use and area variances in *Basista Holdings, LLC*, 2017-Ohio-9375:

> A use variance permits the use of land for purposes other than those that are permitted in the zoning regulation. Area variances do not involve the particular use of the land, but relate to structural or lot restrictions placed on property by zoning restrictions such as setbacks or height limitations. *See Schomaeker v. First Natl. Bank of Ottawa*, 66 Ohio St.2d 304, 306, 421 N.E.2d 530 (1981).

*Id.* at ¶ 36.

{¶27} Finally, the City argued Cavanaugh's interpretation of the Commission's approval of the "multi-family development" use, that it can be interpreted to approve four-story garden apartments, is unwarranted. The City relies on the third condition in the Commission's decision, which plainly requires any variance (i.e., an area variance for a a four-story garden apartment) must be applied for and approved. In order to obtain an area variance, the applicant need only show practical difficulties rather than undue hardship. *Basista Holdings, LLC* at ¶ 41.

{¶28} The common pleas court opined the Commission's decision approving the conditional use was illegal, as the subject of the decision "although styled as a 'conditional use,' [and] erroneously recognized as such by the [Commission], was, for all intent and purposes, in effect a [rezoning] of the subject real estate." (6/12/25 Decision, p. 1.) The common pleas court reasoned the Commission acted outside the scope of its statutory authority as rezoning is a power granted by the Ordinances exclusively to City Council.

{¶29} Pursuant to Ordinance 1191.03 (f), captioned "Action by Council:"

> When the Planning Commission has reported its findings as required herein, Council shall take action to approve or disapprove the proposed amendment to the Zoning Code or Map in the same manner as any other legislation is adopted, except that no amendment that is reported

unfavorably by the Commission shall be approved by Council except upon an affirmative vote of not less than five (5) members of Council.

**{¶30}** The common pleas court vacated the Commission's decision as the application sought "neither a variance nor a conditional use." (*Id.* at p. 1.) In its findings of fact, the common pleas court opined "the 'proposed use' would more closely align with the definition of 'apartment building.' " (*Id.* at p. 2.) The common pleas court further found "[t]he application is not clear in its proposed use as no recognized conditional use was listed in the application leaving [Cavanaugh] to speculate as to specifically what was being applied for and would ultimately be granted." (*Id.*)

**{¶31}** This timely appeal followed.

## STANDARD OF REVIEW

**{¶32}** Pursuant to R.C. 2506.01(A), "every final order, adjudication, or decision of any. . . commission. . . of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located . . ." *See also Midwest Fireworks Mfg. Co. v. Deerfield Twp. Bd. of Zoning Appeals*, 91 Ohio St.3d 174, 177 (2001) ("The right to appeal an administrative decision is neither inherent nor inalienable; to the contrary it must be conferred by statute."). The parties do not dispute the decision at issue in this appeal is a final order.

**{¶33}** In an administrative appeal initiated under R.C. Chapter 2506, the common pleas court is authorized to reverse a final decision of the commission if, after a review of the complete record, it finds that the commission's "decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence . . ." R.C. 2506.04. The common pleas court's decision may then be appealed on questions of law. *Id.* Questions of law are reviewed de novo. *See Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 2014-Ohio-4809, ¶ 25, citing *Lang v. Ohio Dept. of Job & Family Servs.*, 2012-Ohio-5366, ¶ 12.

**{¶34}** In *Cleveland Clinic*, the Ohio Supreme Court explained an appellate court's review of a common pleas court's decision on appeal from a zoning authority is "narrower and more deferential to the lower court's decision." *Id.* This is because the common pleas

court is tasked with reviewing the " 'whole record,' including any new or additional evidence admitted under R.C. 2506.03." *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147 (2000). In contrast, courts of appeals are authorized under R.C. 2506.04 to review only questions of law. *Id.*, citing *Kasil v. Sandusky*, 12 Ohio St.30, 34, fn. 4 (1984). Therefore, we must defer to the common pleas court's factual findings, but need not defer to any legal conclusions reached by the common pleas court. *See Siltstone Resources, L.L.C. v. Ohio Pub. Works Comm.*, 2022-Ohio-483, ¶ 15 ("because this court reviews legal issues de novo, we are not constrained to accept the appellate court's legal analysis").

{¶35} We interpret municipal ordinances and resolutions in the same manner as statutes. *Shampton v. Springboro*, 2003-Ohio-1913, ¶ 30. Therefore, we must answer the question presented in this appeal by first reading the text of the Ordinances to discern their meaning. *See State ex rel. Steele v. Morrisey*, 2004-Ohio-4960, ¶ 21. If the meaning of the ordinances are clear by a plain reading of their text, then we apply the ordinances as written, without looking to other sources or applying tools of statutory interpretation. *See Wilson v. Lawrence*, 2017-Ohio-1410, ¶ 11. Our analysis must strive to give "significance and effect" to "every word, phrase, sentence and part" of the ordinances, *Wachendorf v. Shaver*, 149 Ohio St. 231, 237 (1948), and we must avoid construing the ordinance in a manner that would render words or phrases superfluous, meaningless, or inoperative. *See State ex rel. Myers v. Spencer Twp. Rural School Dist. Bd. of Edn*., 95 Ohio St. 367, 373 (1917).

{¶36} Finally, "zoning ordinances are to be construed in favor of the property owner because they are in derogation of the common law and deprive the property owner of uses to which the owner would otherwise be entitled." *Cleveland Clinic Found.*, 2014-Ohio-4809, at ¶ 34. Likewise, an ordinance must be construed in a manner that comports with common sense and reason and that does not result in an absurd result. *Mishr v. Bd. of Zoning Appeals of Village of Poland*, 76 Ohio St.3d 238 (1996).

## ANALYSIS

## ASSIGNMENT OF ERROR

**THE [COMMON PLEAS] COURT ERRED IN FINDING THAT THE [COMMISSION'S] APPROVAL OF A CONDITIONAL USE WAS EFFECTIVELY A "RE-ZONING."**

**{¶37}** Based on our closely-circumscribed standard of review, we must accept the common pleas court's factual findings, but review its conclusion of law de novo. Although the common pleas court characterized its conclusion that the conditional use application sought approval for the construction of an apartment building, rather than garden apartments, that conclusion rests on the common pleas court's interpretation of Ordinance 1133.03(a)(35) (defining "apartment") and (37) (defining "apartment, garden"), which is a conclusion of law.

**{¶38}** The City advances several arguments, which at first blush appear to support the legality of the Commission's decision. First, the City argues there is a possibility that 1439's use of the Property may not result in the presence of an apartment building in a B-2 district, because 1439 may undertake new construction of a three-story structure. Second, the number of stories of the proposed construction/adaptive use relates to the area, rather than the use. Despite their initial allure, we find both of these arguments upon thorough consideration are meritless.

**{¶39}** The City contends Cavanaugh's challenge to the conditional use approval is not ripe because 1439's use of the Property *may* not result in a violation of the B-2 district ordinance. However, Cavanaugh challenges the legality of the Commission's decision in this appeal approving the conditional use of the Property. The statutory right to appeal the legality of the Commission's approval of a conditional use application to the common pleas court is immediate and is not conditioned upon an actual violation of the Ordinances by the use holder.

**{¶40}** The Commission approved the conversion of the former Brandt Motors/D'Anniballe building into an apartment building. The foregoing conclusion is predicated upon 1439's conditional use application, which represents the use (a "multi-

family development consisting of up to fifty (50) units") will be accomplished through "a new construction building, adaptive reuse, or combination of the two," and "[t]he existing building will remain, regardless of the end product." In other words, among the authorized uses of the Property, the Commission has approved a four-story apartment building in a B-2 district. Moreover, the letter accompanying the conditional use application reads in relevant part, "[t]he desire is to develop no more than 50 units of affordable multifamily housing *using the existing building* and potentially new construction on site." (Emphasis added.) As previously stated, the parties concede the presence of an apartment building in a B-2 district violates the B-2 district ordinance.

{¶41} Nonetheless, the City argues the Commission's decision is not illegal because it conditions the use on a variance in the event 1439 plans to convert all four floors of the former Brandt Motors/D'Anniballe building into an apartment building. To the contrary, the plain language of the Commission's decision grants a variance based on the representations that the building will remain and may be converted through adaptive reuse.

{¶42} Further, the argument that the conditional use and the area variance can be undertaken in two parts is belied by the fact that the area of the structure is part and parcel of the requested use due to the definition of "apartment, garden." In other words, to the extent the Commission approved the adaptive reuse of a "multi-family development consisting of up to fifty (50) units" in a four-story structure, it approved the presence of an apartment building in a B-2 District.

{¶43} Of equal concern, the City argued no variance would be necessary if 1439 converted three floors of the former Brandt Motors/D'Anniballe building into apartments and the fourth floor was used for a permitted commercial use. To the contrary, the definition of "apartment, garden" is as "a multi-family structure two (2) or three (3) stories in height and containing one (1) story dwelling units, under single ownership." "Two or three stories" does not qualify the phrase "dwelling units," it qualifies the term "structure." Therefore, using three floors for apartments of the four-story building would violate the B-2 district ordinance.

{¶44} In summary, the common pleas court concluded the Commission's decision was illegal based on the inexactitude of the requested conditional use coupled with the

similarly inexact representation regarding construction/adaptive reuse, read in conjunction with the definitions of "apartment" and "apartment, garden." We agree the ambiguities in the conditional use application and the failure to clarify those ambiguities in the Commission's decision render it susceptible to at least one use plainly not authorized by the Ordinances, that is, the presence of an apartment building in a B-2 district. Accordingly, we find the City's sole assignment of error is without merit, and the decision of the common pleas court vacating the Commission's decision is affirmed.

Waite, P.J., concurs.

Hanni, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**